PEOPLE v CLARK

Docket No. 103664. Argued October 9, 1996 (Calendar No. 9). Decided
    December 27, 1996.

Bertha Clark was convicted by a jury in the Muskegon Circuit Court,
    James M. Graves, Jr., J., of involuntary manslaughter in the death
    of her four-year-old son from dehydration. The Court of Appeals,
    SAWYER, P.J., and GRIFFIN and NEFF, JJ., reversed in an unpublished
    opinion per curiam, holding that the failure of the trial court to give
    a modified instruction to the jury—as agreed by the parties and the
    court—that gross negligence involved conduct likely to cause
    death, and instead giving the standard instruction that the conduct
    involved only be likely to cause serious injury, after defense coun-
    sel relied on the modification in framing his closing argument, was
    sufficiently prejudicial to require reversal and a new trial (Docket
    No. 144551). The people appeal.

    In separate opinions, the Supreme Court held:

    The defendant was prejudiced by the change in the instructions
    and is entitled to a new trial.

    Justice MALLETT, joined by Justice LEVIN, stated that a court must
    properly instruct the jury so that it may correctly and intelligently
    decide the case. Counsel are to be informed of the instructions to
    be given before closing arguments. Clarity in instructions and
    understanding by counsel of the exact nature of the charge is criti-
    cal because counsel shape their arguments to conform to the law
    as defined by the instructions. Where the trial court errs in mislead-
    ing or misinforming counsel regarding the ultimate instructions
    that will be given and prejudice results, a new trial is required.

    Not every instance of such instructional error will require rever-
    sal. Reversal is required only if the error was prejudicial. The
    inquiry should focus on the nature of the error and assess its effect
    in light of the weight and strength of the untainted evidence.
    Prejudice is determined by the affect of the error on substantial
    rights or its affect on the verdict.

    A change in jury instructions at the eleventh hour should be
    made only with extreme caution. In this case, the prejudice requir-
    ing reversal was incurred when the judge, after agreeing to a modi-
    fied instruction, subsequently decided to charge the jury with the

unmodified instruction. Defense counsel was inadvertently misled by the court and argued the wrong theory to the jury. Consequently, his ability to represent his client was impaired, and the client's right to a fair hearing was prejudiced. The modified instruction required that the defendant know her actions would cause death, and the defense's closing argument was tailored to refute that the state had proven this requisite knowledge beyond a reasonable doubt. Conversely, the instruction actually given required that the defendant know that her actions would result in serious injury. The difference between the levels of proof required to meet the reasonable doubt standard under either theory is far from insignificant. Reargument would not have been an appropriate remedy because the error affirmatively calls into question the validity of the jury's decision.

Under no circumstances should it be concluded or inferred that a trial judge has a duty to instruct the jury incorrectly, or that the judge in this case erred by refusing to give the erroneous instruction. The proposed modification was untimely and improvidently agreed to by the parties and should have been denied immediately, or, alternatively, the judge should have granted a recess to allow the parties time to consider the request. The court rule provides only that the court must give the parties reasonable opportunity to submit written requests before their closing arguments. Although oral requests may not be wise, it does not appear that they are precluded. The instruction given eviscerated the defense's argument and impaired its effectiveness. A mistrial was not requested, and the defense motion for a new trial was denied. Under the circumstances, a new trial is required.

Justice CAVANAGH, concurring, stated that the standard for preserved nonconstitutional error should be judged under the harmless-beyond-a-reasonable-doubt standard. Under this standard, or any other standard articulated by the lead opinion, the error in this case was not harmless.

Justice RILEY, concurring in part and dissenting in part, stated that the error in this case is not based solely on a failure to comply with MCR 6.414(F). Rather, a new trial is necessary because of the trial court's mistake in giving the original instruction despite the fact that defense counsel relied on the modified version in his closing argument, which in turn compromised his ability to effectively represent the defendant. As a consequence of the trial court's mistake, the court effectively denied defense counsel the ability to correctly argue the applicable law to the jury. The ramifications of such an error are constitutional in nature.

In order to find constitutional error under circumstances like those in this case, a showing of prejudice is required before reversal is warranted. A reviewing court first must ask if the error is a structural defect in the constitution of the trial mechanism, which defies analysis by harmless-error standards. When a structural defect is found, a court must automatically reverse. However, not all errors demand reversal per se. Others occur during the presentation of the case to the jury that may be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt. These errors require the reviewing court to determine beyond a reasonable doubt that there is no reasonable possibility that the error asserted might have contributed to the conviction.

In this case, the error does not warrant automatic reversal because it does not equate to a total deprivation of due process. Thus, the trial court's failure to provide the modified instruction must be comparatively assessed in light of the record as a whole and a determination must be made with regard to whether it can be said beyond a reasonable doubt that the error was harmless. Defense counsel argued throughout his closing argument, after the people had consented to and the trial court accepted the modified portion of the instructions, that defendant had to have known death would result as a result of her negligence. The effectiveness of defense counsel's argument and the totality of the defense was impaired by counsel's reliance on inaccurate information regarding the jury instructions. Therefore, it cannot be concluded beyond a reasonable doubt that the trial court's failure to provide the instruction had no effect on the jury's verdict. The jury, in asking for a clarification of the definition of gross negligence, evidenced its confusion regarding the difference between the two arguments and the final instruction.

Affirmed.

Chief Justice BRICKLEY, joined by Justices BOYLE and WEAVER, dissenting, stated that the trial court was under no duty to give the modified instruction, in that it was an incorrect statement of the law and did not satisfy the requirements of MCR 6.414(F).

In both civil and criminal trials, the Michigan Court Rules require that all requests for jury instructions must be in writing, served on the other party, and brought to the court's attention before closing arguments. Defense counsel's proposed modification did not satisfy any of the requirements of MCR 6.414(F). Because defense counsel's modification of the standard jury instructions was brought too late, and was not in writing, it was an ineffective request, and the court was under no duty to give the instruction.

The court, the prosecutor, and defense counsel cannot agree to change the threshold burden of proof for gross negligence because it is the trial court's duty to correctly instruct the jury on the law. If a request for a jury instruction is brought pursuant to MCR 6.414(F) and correctly states the law, it is error for a trial court to refuse to give the instruction after closing arguments if counsel's reliance on the instruction would be prejudicial. But where the instruction misstates the law, the court is under no similar duty.

An inquiry into prejudice focuses on the nature of the error and assesses its effect in light of the weight and strength of the untainted evidence. To find prejudice, there must be some evidence that the alleged error affected the outcome. In this case, the defendant was not prejudiced by the use of the original, correct instruction. The themes of defense counsel's closing argument did not rely on the distinction between death and serious injury, but attempted to deny negligence, refute the alleged cause of death, or shift the blame. The jury rejected these claims, and was not precluded from acquitting the defendant as a result of the change in the jury instructions. If defense counsel's closing argument had hinged on the difference between the two instructions, the defendant might have been prejudiced by the use of the original instruction.

Any duty that the trial court owed to defense counsel to honor its ill-timed request for a change from the standard jury instructions, previously agreed to in chambers, was superseded by the court's responsibility to correctly instruct the jury. The defendant was not prejudiced by the change in jury instructions because the difference between the two instructions did not undermine her arguments.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Tony Tague*, Prosecuting Attorney, and *Kevin A. Lynch*, Senior Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Fred E. Bell*) for the defendant.

MALLETT, J. The defendant was convicted by a jury of involuntary manslaughter in the death of her four-year-old son and was sentenced to a prison term of seven to fifteen years. The Court of Appeals reversed,

holding that the defendant was prejudiced by a change in the jury instructions. We would affirm the decision of the Court of Appeals that the defendant was prejudiced by the change in the instructions and is entitled to a new trial.

I

The decedent was adopted when he was nine months old in March, 1986. He died unexpectedly at the age of four. The medical examiner ultimately concluded that he died from dehydration. This dehydration could not be explained, however, by any underlying, ongoing, or apparent disease process. Child abuse was suspected in the death because of ligature marks and bruises observed on his body.[1]

The decedent suffered from excessive and overwhelming thirst that seemed to have no discovered medical basis. He was described as a compulsive drinker and would go as far as drinking from toilets. He also suffered from frequent urination and began wetting the bed around two years of age. On the advice of her doctor, the defendant restricted the child's liquid intake several hours before bedtime, starting at 7:00 P.M. She asked the teachers not to let him drink more water than the other children at school. She also restricted his intake during the hours that he was in her care.

In March 1989, defendant found the child having a seizure in his room. She told the physician that he drank over a gallon of water earlier that day. Testing

---

[1] Ligature marks may be created when something is tied or bound together.

revealed unusually high salt levels that were inconsistent with drinking so much water. The cause of this high salt level remains unknown.[2] Defendant took the child to the family physician, who sent him to the hospital for follow-up tests. The results of these tests were not reported to the defendant.

The prosecutor presented the defendant as a mother who became obsessed with her son's bedwetting to the point that she withheld liquids, causing him to be fatally dehydrated. Testimony revealed that defendant disciplined her children with a belt and that she would keep the child tied in bed with a cloth belt or nylon stockings to keep him from getting up at night. When he was brought into the hospital, nylon stockings were found under his body on the stretcher. The defense, on the other hand, argued that this was a frustrating and difficult child who had many medical problems that were inadequately addressed by the medical community. The Kent County medical examiner who performed the autopsy concluded that the child died because water was withheld from him.

The defendant was charged with involuntary manslaughter. The statute for that offense only defines the penalty;[3] the elements of involuntary manslaughter are defined by common law:

---

[2] The prosecutor hinted that defendant deliberately loaded him down with salt to retain fluid. Medical testimony indicated no source for the high sodium other than he must have ingested something.

[3] MCL 750.321; MSA 28.553 provides:

  Any person who shall commit the crime of manslaughter shall be guilty of a felony punishable by imprisonment in the state prison, not more than 15 years or by fine of not more than 7,500 dollars, or both, at the discretion of the court.

"Involuntary manslaughter is the killing of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty." [*People v Ryczek*, 224 Mich 106, 110; 194 NW 609 (1923) (citation omitted).]

The kind of negligence required for manslaughter is something more than ordinary or simple negligence, however, and is often described as "criminal negligence" or "gross negligence," *People v Townes*, 391 Mich 578, 590, n 4; 218 NW2d 136 (1974), "wilfulness, or of wantonness and recklessness." *People v Orr*, 243 Mich 300, 307; 220 NW 777 (1928).

For a defendant's behavior to be considered grossly negligent, three elements must be satisfied.[4] These elements are embodied in CJI2d 16.18 that expressed the people's theory of the defendant's guilt. The instruction states:

(1) Gross negligence means more than carelessness. It means willfully disregarding the results to others that might follow from an act or failure to act. In order to find that the defendant was grossly negligent, you must find each of the following three things beyond a reasonable doubt:

---

[4] These elements are:

(1) Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another.

(2) Ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand.

(3) The omission to use such care and diligence to avert the threatened danger when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another. [*People v Orr, supra* at 307.]

(2) First, that the defendant knew of the danger to another, that is, he knew there was a situation that required him to take ordinary care to avoid injuring another.

(3) Second, that the defendant could have avoided injuring another by using ordinary care.

(4) Third, that the defendant failed to use ordinary care to prevent injuring another when, to a reasonable person, it must have been apparent that the result was likely to be serious injury.

Before closing arguments, the parties and the court agreed to this instruction.

At the end of closing argument, and in reliance on CJI2d 16.18, the prosecutor noted that the people did not have to prove that the defendant intended that the child should die, but instead that her grossly negligent behavior of withholding fluids resulted in his death. The prosecutor stated:

You are going to get an instruction on what gross negligence is. You are going to hear that it is you knew of the danger, there was a danger to another—that is, she knew that there was a situation that required him to take—that required her to take ordinary care to avoid injuring another, that she could have avoided the injury by using ordinary care—giving the child water—and that she failed to use ordinary care to prevent injuring another when to a reasonable person it must have been apparent that the result was likely to cause serious injury.

The prosecutor summed up the evidence that pointed to defendant's knowledge that restricting fluids was imprudent and harmful to the point that it could cause death and did so in this instance.

After the prosecutor's closing argument, defense counsel requested a change in the jury instruction on

gross negligence.[5] Defense counsel wanted the phrase "cause death" to replace cause "serious injury," in CJI2d 16.18(4). This request occurred in a sidebar conference, out of the hearing of the jury, and was not recorded. However, without considering the effect this would have on the proceedings, the prosecutor and the judge agreed to the modification. Defense counsel then proceeded with his closing argument. The defense argued that the decedent was a difficult child, that the defendant was not inattentive to his needs, but was a concerned parent doing her best in a difficult situation, and that it could not possibly have been apparent to her that her actions would result in his death.

Before instructing the jury, defense counsel raised the issue of the changed instruction to confirm the modification. The prosecutor entered an objection to the previously modified instruction, noting that the people did not have to prove that the defendant knew that her actions would cause death under the definition of gross negligence embodied in the manslaughter instructions. Indicating that the modification might be a misstatement of the law and that it also set a higher standard than the law required, the judge changed his mind and decided that the instruction should not be given. Consequently, the judge properly instructed the jury with the standard instruction that was the correct statement of the law.

---

[5] There is no clear evidence in the record that defense counsel deliberately tried to " 'dictate the law by which a verdict is reached or to create a mistrial by erroneously stating the legal principles applicable to a given situation,' " as the dissent intimates. Quoting *United States v Pena*, 897 F2d 1075, 1085 (CA 11, 1990). *Post* at 612-613.

Defense counsel objected because he had relied on the modified instruction in formulating his closing argument. The judge, acknowledging the predicament that had been created, offered the defense the opportunity to reopen the closing argument. Defense counsel declined this invitation, stating that in his opinion the modified instruction was not a misstatement of the law and that to reargue would only accentuate issues that should not be accentuated and create credibility problems with the jury. Further, he noted that he could not prepare a new argument on such short notice.

During deliberations, the jury requested a "[d]efinition of the guidelines to find negligence." The parties and the court determined that this was a request for clarification of the definition of gross negligence and agreed to a rereading of CJI2d 16.18, the legal instruction on gross negligence. Eventually, the jury returned a verdict of guilty.

Defense counsel moved for a new trial, arguing that his client's right to a fair trial was irreversibly prejudiced when the judge changed the content of the instruction after defense counsel relied on the previous modification. This motion was denied. At no time did the parties or the court raise the possibility of declaring a mistrial.[6]

---

[6] A mistrial might have been declared on the basis of manifest necessity. However, we do not wish to imply that the trial judge is under any obligation to do so sua sponte. This is within the sound discretion of the trial judge and would not be prohibited under either the federal or state constitutions if the judge is persuaded that such emergent circumstances exist that "justice . . . cannot be achieved without aborting the trial . . . ." *People v Henley*, 26 Mich App 15, 29; 182 NW2d 19 (1970), citing *United States v Perez*, 22 US (9 Wheat) 579, 580; 6 L Ed 165 (1824). Declaring a mistrial could have been accomplished without the consent of the defendant and without violating double jeopardy concerns if dictated

The defendant appealed her conviction in the Court of Appeals,[7] arguing that the modification of the jury instruction and defense counsel's reliance on the modification, and the judge's decision to give the unmodified instruction, was sufficiently prejudicial to require reversal. The Court of Appeals agreed. It found that the difference between the two instructions was critical. The Court could not find that this was a case in which the error was so minor as to be harmless or that this was error that could be cured easily by reargument. Reargument would only be appropriate if it would not prejudice the defendant. The Court noted, "Clearly, there is a substantial difference between having to prove that a reasonable person would know that the conduct would likely cause death and proving that a reasonable person would know that his conduct would likely cause serious injury." Unpublished opinion per curiam, issued June 23, 1995 (Docket No. 144551), slip op at 2. The Court agreed with the defendant that reargument was not a reasonable resolution in this case for the same reasons argued to the judge at the trial.

> [W]e do not believe that it would be a reasonable resolution of the matter to allow closing arguments to be reopened. As defendant pointed out, that would only have accentuated the issue, and it would be difficult, if not

---

by manifest necessity. *Id.* The prosecution has not raised before this Court the claim that the defendant's failure to request a mistrial waived the error.

[7] Defendant raised two other issues in her appeal. These involved the prosecutor's handling of the autopsy process. The Court of Appeals held that although the prosecutor acted improperly, this misconduct did not deprive the defendant of the ability to have a fair trial, and the Court refused to set aside the convictions on this basis, finding the issue of the changed jury instructions dispositive. [Unpublished opinion per curiam, issued June 23, 1995 (Docket No. 144551), slip op at 2.]

impossible, to credibly put together a new closing argument
designed around a definition involving serious injury after
having already argued to the jury on the basis of a defini-
tion involving death. Finally, it should not be overlooked
that the first instruction had been agreed to by the prosecu-
tor. [*Id.*]

The Court of Appeals held that the defendant was
prejudiced by the change in instruction and therefore
entitled to a new trial. *Id.*, citing *United States v
White*, 27 F3d 1531, 1538 (CA 11, 1994).

II

A court must properly instruct the jury so that it
may correctly and intelligently decide the case. *People
v Townes, supra* at 586, citing *People v Murray*, 72
Mich 10; 40 NW 29 (1888).  See also *Ross v United
States*, 180 F2d 160 (CA 6, 1950).  The pertinent rule
in criminal trials is MCR 6.414(F),  which provides:

> Before closing arguments, the court must give the parties
> a reasonable opportunity to submit written requests for jury
> instructions. Each party must serve a copy of the written
> requests on all other parties. The court must inform the par-
> ties of its proposed action on the requests before their clos-
> ing arguments. After closing arguments are made or waived,
> the court must instruct the jury as required and appropri-
> ate, but with the parties' consent, the court may instruct the
> jury before the parties make closing arguments. After jury
> deliberations begin, the court may give additional instruc-
> tions that are appropriate.[8]

---

[8] MCR  2.516(A)(1)   is the rule governing  civil  trials and similarly
provides:

> At a time the court reasonably directs, the parties must file writ-
> ten requests that the court instruct the jury on the law as stated in
> the requests. In the absence of a direction from the court, a party

The reason for this is obvious. Clarity in instructions and understanding by counsel of the exact nature of the charge is critical, because counsel shape their arguments to conform to the law as defined by the instructions. As the United States Supreme Court stated in *Herring v New York*, 422 US 853, 862; 95 S Ct 2550; 45 L Ed 2d 593 (1975):

> It can hardly be questioned that closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. For it is only after all the evidence is in that counsel for the parties are in a position to present their respective versions of the case as a whole. Only then can they argue the inferences to be drawn from all the testimony, and point out the weaknesses of their adversaries' positions. And for the defense, closing argument is the last clear chance to persuade the trier of fact that there may be reasonable doubt of the defendant's guilt.

In *People v Patskan*, 387 Mich 701; 199 NW2d 458 (1972), this Court addressed a similar issue. The parties requested instructions on both the crimes of attempted armed robbery and attempted assault with intent to commit armed robbery. The judge decided he would only give an instruction on attempted assault with intent to commit armed robbery.[9] The

---

may file a written request for jury instructions at or before the close of the evidence.

This rule provides further that "[t]he court shall inform the attorneys of its proposed action on the requests before their arguments to the jury." MCR 2.516(A)(4).

[9] The Court of Appeals initially noted that there is no offense of attempted assault, but this Court did not address that issue because its decision regarding the jury instruction was dispositive. *Id.* at 711.

defense, therefore, made its closing argument in reliance on the giving of this instruction. The judge, however, did not give either instruction, and both parties properly objected. *Id.* at 706-707. This Court held that the judge violated GCR 1963, 516.1[10] when he failed to give the instruction. The lead opinion stated:

> As the people point out, defendant's basic defense was that he was not a participant in the crime. However, this does not lessen the prejudice to him where the court has agreed to give a specific charge and then fails to do so. His counsel forcefully argued that if any crime was committed it was attempted assault with intent to rob being armed. *The failure of the trial judge to give the instruction after indicating he would do so, was fundamentally unfair, violated GCR 1963, 516.1 and, also, defendant's right to due process of law. Therefore, the conviction must be reversed and a new trial held.* [*Patskan* at 710 (emphasis added).]

Although the reasoning in *Patskan* did not command a majority, we find it persuasive and instructive here.[11]

---

[10] GCR 1963, 516.1 was basically the same as MCR 2.516, and provided:

Request for Instructions: At or before the close of the evidence, any party may, or at any time the Court reasonably directs, the parties shall, file written requests that the Court instruct the jury on the law as set forth in the request. A copy of such requested instructions shall be served on the adverse parties in accordance with GCR 1963, 107. The court shall inform counsel of its proposed action on the requests prior to their arguments to the jury and, subject to the provision of subrule 516.3, shall instruct the jury after the arguments are completed.

[11] *Patskan* was written by Justice SWAINSON with whom only Justice WILLIAMS concurred. Chief Justice T. M. KAVANAGH and Justice ADAMS concurred only in the result. Justice T. G. KAVANAGH concurred in the result, but did not agree that the trial judge's omission "constituted reversible error." *Id.* at 716.

The Court of Appeals relied on *Patskan* in *People v Swejkowski*, 90 Mich App 366; 282 NW2d 5 (1979). The trial judge failed to give an instruction regarding circumstantial evidence. This instruction had been submitted to the court with other requests, and the judge said that all of the instructions would be given to the jury. The judge failed to give the instruction on circumstantial evidence despite defense counsel's objection. The prosecutor argued that the instructions given were sufficient. The judge reasoned that the omitted instruction was unnecessary because there was enough direct evidence to establish the defendant's guilt. The Court of Appeals disagreed. It noted:

> "The court is required to inform counsel of its proposed action on the requests prior to their arguments to the jury. The obvious purpose of this provision is to enable counsel to know which requests will be granted or denied, in order to argue the facts in light of the law as the court will charge the jury." [*Id.* at 370, quoting 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), comments, p 565 (citation omitted).]

Citing *Patskan*, the Court held that if the judge previously agreed to give a certain instruction and counsel relied on this in closing argument, then failure to give the instruction was error requiring reversal. *Id.* at 371.

In *People v Paxton*, 47 Mich App 144; 209 NW2d 251 (1973), the Court of Appeals reversed a conviction and ordered a new trial in a case in which the jury was incorrectly charged regarding the elements of self-defense. The trial court failed to inform the jury that one need not retreat from one's own home in order to establish self-defense. The Court stated that the "trial court was in error in allowing the

defendant to proceed on the wrong theory," and that this error required reversal. *Id.* at 149. Although not directly on point, *Paxton* is helpful. In the instant case, the problem was not an incorrect instruction to the jury, but an instruction that did not support the theory argued by the defense. In *Paxton*, the jury operated under the assumption that the defendant had to retreat from a threat in her own home. In the instant case, defense counsel argued that the defendant should be acquitted because she did not know her actions would result in death. In each case, there was reliance on a mischaracterization of a critical issue that directly affected the theories argued by defense counsel that resulted in prejudice to the defense. We think the reasoning in *Paxton* is persuasive and supports granting a new trial.

Our cases, as well as federal authority, indicate that where the trial court errs in misleading or misinforming counsel regarding the ultimate instructions that will be given to the jury and prejudice results, a new trial is required.[12] We note, however, that not every instance of this type of instructional error will require reversal.[13] "Simply stated, and employed in both federal rule and case law and state statute and court rule, reversal is required only if the error was prejudi-

---

[12] For example, in *Ross v United States, supra*, the United States Court of Appeals for the Sixth Circuit noted that, "it being the duty of the court to charge the jury correctly, restatement of the proposition in clear, explicit, and correct language was demanded, so that no confusion could possibly be left in the minds of the jurors . . . ." *Id.* at 166. Counsel should know ahead of time what the charges will be so that they may properly argue the case to the jury. *Id.* at 165. This case was remanded for a new trial. See also *United States v Harvill*, 501 F2d 295 (CA 9, 1974); *United States v Gaskins*, 849 F2d 454 (CA 9, 1988).

[13] Michigan courts adhere to the harmless error doctrine, set out both by statute and by court rule. The statute provides:

cial. That inquiry focuses on the nature of the error and assesses its effect in light of the weight and strength of the untainted evidence." *People v Mateo*, 453 Mich 203, 215; 551 NW2d 891 (1996), citing *People v Peterson*, 450 Mich 349, 377-378; 537 NW2d 857 (1995). Prejudice is determined by the affect of the error on substantial rights or its effect on the verdict. *Mateo* at 219.[14]

---

> No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice. [MCL 769.26; MSA 28.1096.]

Similarly the court rule states:

> An error in the admission or the exclusion of evidence, an error in a ruling or order, or an error or defect in anything done or omitted by the court or by the parties is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice. [MCR 2.613(A).]

[14] In assessing the level of prejudice required to reverse a conviction, Justice BOYLE addressed the differences between the standards for evaluating the effect of preserved constitutional and preserved nonconstitutional error. *Id.* at 216-217. In *Mateo*, a majority of this Court rejected the use of the *Chapman* standard in cases of nonconstitutional error, stating that "[t]he fundamental protections of individual liberties embodied in constitutional rights are not at issue when the error is not of constitutional dimension." *Id.* at 217. See *Chapman v California*, 386 US 18; 87 S Ct 824; 17 L Ed 2d 705 (1967).

Justice BOYLE noted that the federal courts employ several standards when evaluating the effect of nonconstitutional error on the outcome of the proceedings. These are the "highly probable, more probable than not, and a reasonable likelihood" that the outcome was affected. *Id.* at 219. She further noted the tests suggested by Chief Justice Traynor in his book on harmless error, which rejected the *Chapman* standard. These tests are a highly probable standard and a more probable than not standard. *Id.*, ns

III

A change in jury instructions at the eleventh hour, as occurred here, should be made only with extreme caution. In this case, defense counsel was inadvertently misled by the court and argued the wrong theory to the jury. Consequently, his ability to represent his client was impaired, with the result that the client's right to a fair hearing was prejudiced. The rule that counsel be informed of the instructions to be given to the jury before closing arguments enables counsel to tailor arguments to the proper legal standards. If the instruction is changed after an attorney relies on it, it impairs not only the content and quality of the final argument, but the effectiveness of the representation as well.

In this case, the prosecutor does not disagree, but claims that the defendant did not suffer any prejudice because the difference between the two theories is not significant and that consequently the outcome

18-19. See also *Kotteakos v United States*, 328 US 750; 66 S Ct 1239; 90 L Ed 1557 (1946) (substantial influence on the outcome standard).

We do not believe that the error in this case is of constitutional proportion. The trial was fair and speedy, counsel was not ineffective, and the jury was properly charged. In *People v Anderson (After Remand)*, 446 Mich 392, 405; 521 NW2d 538 (1994), this Court listed what properly may be considered constitutional error warranting automatic reversal. These include: "[T]he total deprivation of the right to trial counsel, an impartial judge, excluding grand jury members who are the same race as defendant, denial of the right to self-representation, denial of the right to a public trial, and a constitutionally improper reasonable doubt instruction."

However, *Mateo* did not define the ultimate standard by which the effect of nonconstitutional error should be evaluated. The analysis suggests that the appropriate standard lies somewhere between a reasonable doubt on the one hand and a reasonable likelihood that the outcome was affected on the other. *Id.* at 218-219. While a high probability standard may be the most appropriate test, the majority pointed out that without input from the bench and bar, "it is unwise for this Court to unilaterally adopt a definitive standard." *Id.* at 220.

would have been the same. The prosecutor further argues that the defense attorney should not gain an advantage after deliberately injecting error into the proceedings and then refusing to correct the error by rearguing when he was given the opportunity to do so.

We disagree. The error here is not a minor one. The instruction relied on by defense counsel required that the defendant know her actions would cause death. The defense's closing argument was tailored to refute that the state had proven this requisite knowledge beyond a reasonable doubt. Conversely, the instruction actually given required that the defendant know that her actions would result in serious injury. The gap between these two standards is far from insignificant. The difference between the levels of proof required to meet the reasonable doubt standard under either theory is also far from insignificant. Further, the jury asked for a reclarification of the definition of gross negligence; thus, it is apparent that the jury was confused by the difference between the two arguments and the final instructions.

In the instant case, the prejudice requiring reversal was incurred when the judge, after agreeing to a modified instruction, subsequently decided to charge the jury with the unmodified instruction after defense counsel relied on and conformed his closing arguments to the modified instruction. Defense counsel tailored his closing argument to be consistent with the theory that the defendant could not possibly have known that withholding water from the child would lead to his death.[15] This is a far greater threshold of

---

[15] Excerpts from the closing argument are illustrative:

knowledge for the prosecutor to prove than proving merely that the defendant knew her actions would cause serious injury, which was the theory argued by the prosecutor.

We find it impossible to conclude that the last minute change in the instructions did not affect the verdict. Under the higher standard argued by defense counsel, the defendant might have been acquitted. We agree with the Court of Appeals that reargument would be inappropriate. This would have accentuated the issue and impaired defense counsel's credibility with the jury. Because this error affected the jury's result, it is prejudicial error requiring reversal because it affirmatively calls into question the validity of the jury's decision. *Mateo, supra*; see also *People v Grant*, 445 Mich 535; 520 NW2d 123 (1994).

IV

Under no circumstances do we conclude, advocate, or imply that a trial judge has a duty to instruct the jury incorrectly, nor do we say that the judge erred by refusing to give the erroneous instruction.

The prejudice to the defendant in this case was incurred by virtue of defense counsel's argument in reliance on one instruction and the judge's subsequent decision to instruct the jury on a different one. This misled defense counsel in formulating his closing

---

The issue before you is whether she acted in a grossly negligent manner and that conduct caused his death. . . . It is what she did to Rodney and whether under the circumstances it was apparent to her what she did caused his death. . . . [S]he was never told medically that that—her conduct would lead to any dangerous condition. We have not heard that from anyone. . . . So she got no support or no clue that what she was doing—that is, denying him when he wanted more water—that that was wrong or that would lead to death.

argument.[16] The attorneys and the court complied with the rule up to the time that defense counsel requested the modification. The violation or lack of compliance with the rule is not as much the fact that the requests were not written, as it was that the proposed modification was requested between the two closing arguments, and neither the prosecutor nor the judge had ample opportunity to consider its full import before either closing argument. We note again that the prosecutor and the judge initially agreed with the modification.

The dissent argues that the modification was inappropriate from the outset because it did not satisfy the requirements of MCR 6.414(F). The modification was not written nor was it served on the prosecutor. We agree with the dissent that the proposed modification was untimely and improvidently agreed to by the parties and should have been denied on the spot or, alternatively, the judge should have granted a recess to allow the parties some time to consider the request. However, neither the dissent's nor the people's briefs cite any authority to support the proposition that requests for instructions can only be submitted in writing. The rule states only that the court must give the parties reasonable opportunity to submit written requests before their closing arguments. Oral requests may not be wise, but it does not appear that they are precluded.[17]

---

[16] "The trial court's failure to comply with Rule 30 constitutes reversible error only if the party was unfairly prevented from arguing his defense to the jury or was substantially misled in formulating his arguments." *United States v Smith*, 629 F2d 650, 653 (CA 10, 1980) (citations omitted). FR Crim P 30 is the federal counterpart of MCR 6.414. See dissent at 612-613.

[17] This Court has noted that a trial judge may

The dissent opines that because defense counsel did not comply with the strictures of the court rule, and because the judge subsequently did instruct the jury correctly, there was no error. What the dissent fails to consider, however, is the resulting prejudice to the defendant. The fact that the judge correctly instructed the jury is not the issue. Nor is it the fact that the requested instruction was untimely, unwritten, or incorrect. The issue is the prejudice suffered by the defendant " 'when the change in the instructions is substantial, when the judge's instructions repudiate counsel's argument, or when the judge's instructions impair the effectiveness of the attorney's argument.' " *United States v White, supra* at 1538, quoting *United States v Clark*, 732 F2d 1536, 1541-1542 (CA 11, 1984). We maintain that the difference between the incorrect instruction relied upon and the instruction given was substantial. The resulting prejudice could not effectively be cured through reargument. The instruction given eviscerated the defense's argument and impaired its effectiveness. A mistrial was not requested, and the defense motion for a new trial was denied. Under these circumstances, a new trial is required.[18]

---

comply with an oral request if he thinks it proper to do so, but, if he declines, such refusal is not a proper basis for an assignment of error. As suggested by this Court in *Anthony v Cass County Home Telephone Co*, 165 Mich 388, 401 [130 NW 659 (1911)], such practice "is not to be commended for many reasons that must be apparent to the profession." However, without reference to the form in which the request was made in the instant case, its denial was not erroneous. [*Corpron v Skiprick*, 334 Mich 311, 319; 54 NW2d 601 (1952).]

[18] See also *United States v Smith*, n 16 *supra* at 653 (error requiring reversal occurs "only if the party was unfairly prevented from arguing his

Defense counsel relied on the judge's agreement to instruct the jury with a modified instruction relating to the definition of gross negligence in his closing argument. The judge's subsequent decision to instruct the jury with the unmodified instruction, erroneous or not, effectively nullified the defense's theory as argued to the jury and consequently prejudiced the defense. The jury was concerned about the definition of gross negligence and requested clarification on this element. Because we cannot say with confidence that this did not affect the jury's final outcome or that, had the court charged the jury with the modified instruction, the defendant would not have been acquitted, we would affirm the decision of the Court of Appeals and would hold that the defendant is entitled to a new trial.

---

defense to the jury or was substantially misled in formulating his arguments"); *Wright v United States*, 339 F2d 578, 579 (CA 9, 1964) ("[c]ounsel's closing argument was based upon a theory of defense which the court rejected, or at least ignored, in its subsequent instructions. We cannot say that this did not impair the effectiveness of counsel's argument and hence of appellant's defense"); accord *United States v Gaskins*, n 12 *supra* at 458-459; *United States v Harvill*, n 12 *supra* at 296-297; *United States v Pommerening*, 500 F2d 92, 101 (CA 10, 1974); *United States v Mendoza*, 473 F2d 697, 701 (CA 5, 1973). In *Mendoza*, the United States Court of Appeals for the Fifth Circuit noted that despite overwhelming evidence of guilt there was a "failure of substantial compliance with the [court] rule." The court stated:

> Although we recognize that the evidence against the defendants is nearly overwhelming, we cannot say with reasonable certainty that the outcome would be the same if the defense had argued before the jury with accurate information about the Trial Judge's proposed action upon the requested jury instructions. Therefore, we think the circumstances warrant granting defendant a new trial. [*Id.* at 701.]

In a footnote the court noted: "This action is not taken by any constitutional mandate, but rather in our supervisory capacity to assure that the Federal Rules of Criminal Procedure are followed." *Id.*, n 4.

LEVIN, J., concurred with MALLETT, J.

CAVANAGH, J. *(concurring)*. I concur with the result and reasoning of the lead opinion, with the exception of the harmless error standard. As I articulated in *People v Mateo*, 453 Mich 203; 551 NW2d 891 (1996), I believe the standard for preserved nonconstitutional error should be judged under the harmless-beyond-a-reasonable-doubt standard. Under this standard, or any other standard articulated by the lead opinion, I believe the error here was not harmless.

RILEY, J. *(concurring in part and dissenting in part)*. I agree with the lead opinion that a new trial is warranted. I write separately because I disagree that the error here is based solely on any failure to comply with MCR 6.414(F).[1] Rather, I conclude that a new

---

[1] The lead opinion treats the error as a technical violation of MCR 6.414. The United States Supreme Court, as well as this Court, had long ago attempted to avoid reversal on the basis of mere technicalities. In *Kotteakos v United States*, 328 US 750, 760; 66 S Ct 1239; 90 L Ed 1557 (1946), the Supreme Court observed that the effort to revise the Federal Rules of Criminal Procedure had, as its ultimate goal,

> "not [to] be technical, where technicality does not really hurt the party whose rights in the trial and in its outcome the technicality affects. . . . [Rather,] the party seeking a new trial [has] the burden of showing that any technical errors that he may complain of have affected his substantial rights, otherwise they are to be disregarded."

Thus, if this is merely a technical violation of a court rule, then we should be reviewing the record to determine the amount of credible evidence establishing defendant's guilt. *People v Mateo*, 453 Mich 203, 207, 215; 551 NW2d 891 (1996) ("[R]eversal is only required if the error was prejudicial. That inquiry focuses on the nature of the error and assesses its effect in light of the weight and strength of the untainted evidence"), citing, inter alia, *People v Peterson*, 450 Mich 349, 377-378; 537 NW2d 857 (1995); *People v Straight*, 430 Mich 418, 427; 424 NW2d 257 (1988); *People v Young (After Remand)*, 425 Mich 470, 505; 391 NW2d 270 (1986).

trial is necessary on the basis of the trial court's mistake in giving the original instruction despite the fact that defense counsel relied on the modified version in his closing argument, which in turn compromised defense counsel's ability to effectively represent defendant.[2] As a consequence of the trial court's mistake, the court effectively denied defense counsel the ability to correctly argue the applicable law to the jury.[3] I also believe the ramifications of such an error are constitutional in nature.

I

I agree with the lead opinion in finding persuasive *People v Patskan*, 387 Mich 701; 199 NW2d 458 (1972). My persuasion, however, is based on the fact

---

[2] The lead opinion frames the error here as "instructional error." *Ante*, p 587. However, I find this to be an inaccurate description because the trial court, upon realizing that the amended instructions were legally wrong, ruled that it could not provide these instructions because the prosecutor's burden under them would be inappropriately heightened. Hence, the error here does not involve "instructional error"; rather, it centers on the prejudicial effect on the defense as a result of the trial court's granting defense counsel's motion to amend immediately before his closing argument and then giving the original version of the instructions to the jury.

[3] If the trial court had given the modified instructions as agreed by the people to the jury, the people would have had a higher burden to satisfy, i.e., causing death versus serious injury. Yet, with this higher burden, had the jury found defendant guilty of manslaughter, reversal would not have been required because all the elements of the crime as charged would be satisfied beyond a reasonable doubt.

I note that this conclusion conflicts with the concurring opinion in *People v Patskan*, 387 Mich 701, 716; 199 NW2d 458 (1972) (T. G. KAVANAGH, J., joined by WILLIAMS, J.). The concurrence was concerned that "had the instruction been given, and defendant been convicted thereunder, we would have no choice but to reverse the conviction." However, the instruction relied on by defense counsel in *Patskan*, was arguably unwarranted because no such crime existed. While, here, the crime of manslaughter is a culpable offense and, thus, had the jury found the essential elements necessary for a conviction, this Court would not reverse, i.e., we would not reverse because the people would have sustained a higher threshold.

that the *Patskan* Court stated that the error before it was "fundamentally unfair" and an infringement on the "defendant's right to due process of law." *Id.* at 710.[4] Additionally, the United States Supreme Court in *United States v Cronic*, 466 US 648, 659, n 25; 104 S Ct 2039; 80 L Ed 2d 657 (1984), citing, inter alia, *Herring v New York*, 422 US 853; 95 S Ct 2550; 45 L Ed 2d 593 (1975), noted that it

> has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding.

In *Herring, supra* at 860, 862-863, the Supreme Court concluded:

> "The Constitutional right of a defendant to be heard through counsel necessarily includes his right to have his counsel make a proper argument on the evidence and the applicable law in his favor . . . ."
>
> [N]o aspect of such advocacy could be more important than the opportunity finally to marshal the evidence for each side before submission of the case to judgment.

---

[4] See *People v Swejkowski*, 90 Mich App 366, 371; 282 NW2d 5 (1979). The Court observed that the failure of a trial court to give an instruction on circumstantial evidence after acknowledging it would do so is "fundamentally unfair and requires reversal." Furthermore, the Court stated:

> The language in *Patskan* appears to be unequivocal that where the court fails to give an instruction that it previously agreed to give, and the party requesting it relies on it in closing argument, it is reversible error.

See also, cf., *People v Brown*, 136 AD2d 1, 16; 525 NYS2d 618 (1988); *People v Reina*, 94 AD2d 727; 462 NYS2d 264 (1983).

* * *

[T]he difference in any case between total denial of final argument and a concise but persuasive summation could spell the difference, for the defendant, between liberty and unjust imprisonment.

Accordingly, because the United States Supreme Court has held that the closing argument " 'necessarily includes [the defendant's] right to have his counsel make a proper argument on [all the admissible] evidence' "[5] that had been presented before the jury, I conclude that the error here is constitutional in dimension.[6]

---

[5] *Herring, supra* at 860.

[6] Similarly, other jurisdictions have also concluded such errors as the one now before this Court to be constitutional in nature. See, cf., *State v Barton*, 936 SW2d 781 (Mo, 1996). In *Barton*, the defendant argued that the trial court abused its discretion when it sustained the people's objection to defense counsel's closing argument, even though the argument was supported by credible evidence on the record. The Supreme Court of Missouri held, notwithstanding that

[t]he vast majority of case law in Missouri has resolved this issue in favor of a finding of no prejudice because of overwhelming evidence against the defendant. . . . [The] defendant has the right to a fair and impartial trial, [which includes] a reasonable opportunity to present the defendant's theory of the case during closing argument. [*Id.* at 787, 783, citing US Const, Am VI; Mo Const, art I, § 18(a); *Herring, supra* at 860-861; and *State v Williams*, 681 SW2d 948, 950 (Mo App, 1984).]

While, in *Murray v State*, 857 SW2d 806 (Tex App, 1993), the defendant averred that the trial court's supplementation of the jury charge, after the jury had already begun deliberating, violated his Sixth Amendment right to effective assistance of counsel. The *Murray* court initially observed that the United States Supreme Court has " 'uniformly found constitutional error without any showing of prejudice when counsel was . . . prevented from assisting the accused during a critical stage of the proceeding.' " *Id.* at 809, quoting *Cronic, supra* at 659, n 25. The court added that "[o]ne such critical stage is the closing argument." *Id.* at 810, citing *Herring, supra* at 858-859.

II

In order to find constitutional error under circum-
stances like those in the instant case, a showing of
prejudice is required before reversal is warranted.[7] I
believe the proper analytical framework for prejudice
analysis is found in *People v Anderson (After
Remand)*, 446 Mich 392, 405; 521 NW2d 538 (1994).

---

Commensurate with the fundamental nature of the error before it, the
court concluded, inter alia, that defendant's counsel, without notice that
the court would give the supplemental instruction, was misled in his
defense, and, as a result, the court effectively repudiated the defendant's
argument; an argument the court originally allowed. *Murray, supra* at
808-811.

See also, cf., *North Carolina v Miller*, 477 SE2d 915, 924 (NC, 1996);
*People v Marshall*, 13 Cal 4th 799, 853; 919 P2d 1280 (1996); *South Caro-
lina v Mouzon*, 467 SE2d 122, 124-125 (SC, 1995); *People v Middleton*, 212
AD2d 809, 811; 623 NYS2d 298 (1995); *People v Rodrigues*, 8 Cal 4th 1060,
1183; 885 P2d 1 (1994); *State v Crooks*, 884 SW2d 90, 94 (Mo App, 1994);
*Moore v State*, 848 SW2d 920, 923 (Tex App, 1993); *Hickey v State*, 484 So
2d 1271, 1274 (Fla, 1986); *State v Williams, supra* at 950, citing *Herring,
supra; United States v King*, 650 F2d 534 (CA 4, 1981); *Ruedas v Texas*,
586 SW2d 520, 523-524 (Tex Crim App, 1979); *State v Page*, 21 Mo 257,
259 (1855).

[7] Consequently, I agree with the lead opinion that "not every instance
of this type of . . . error will require reversal." *Ante*, p 587. However, I
find *Mateo*, n 1 *supra*, to be inapplicable under these particular circum-
stances. My concern in framing this error as constitutional is significant
because I believe it is dispositive of whether the circumstances demand a
new trial. If *Mateo* is applied, the relief sought by defendant may not be
warranted.

Under *Mateo*, n 1 *supra* at 206-207, the reviewing court, "examin[ing]
the record as a whole . . . [and] . . . engag[ing] in a comparative analy-
sis of the likely effect of the error in light of the other evi-
dence . . . [determines] the actual prejudicial effect of the error on the
factfinder in the case at hand." *Id.*, citing *People v Lee*, 434 Mich 59; 450
NW2d 883 (1990). If the court finds "overwhelming evidence of guilt,"
then "it is unnecessary to reach the question of the level of confidence the
reviewing court must have in the harmlessness of preserved error," i.e.,
"highly probable, more probable than not, and a reasonable likelihood
that the error affected substantial rights." *Mateo*, n 1 *supra* at 219.

Accordingly, if this Court were to find "overwhelming evidence of
[defendant's] guilt," which arguably there is, her conviction must be
affirmed.

There, we outlined the inquiry the United States Supreme Court held must be made by a reviewing court regarding "[a]n error that violates the federal constitution . . . ." *Id.* at 404, citing *Chapman v California,* 386 US 18, 24; 87 S Ct 824; 17 L Ed 2d 705 (1967), and *Arizona v Fulminante,* 499 US 279; 111 S Ct 1246; 113 L Ed 2d 302 (1991).[8] In *Anderson, supra* at 405, we noted that the Court in *Fulminante, supra* at 309, stated that the reviewing court:

> First . . . must ask if the error is a "structural defect[ ] in the constitution of the trial mechanism, which def[ies] analysis by 'harmless-error' standards."[9]

When a structural defect is found, "a court must automatically reverse." *Anderson, supra* at 405. However, not all errors demand reversal per se. Instead, other errors

> "occur[ ] during the presentation of the case to the jury, [ ] which may [ ] be quantitatively assessed in the context of other evidence presented in order to determine whether its

---

[8] See, e.g., *Argersinger v Hamlin,* 407 US 25; 92 S Ct 2006; 32 L Ed 2d 530 (1972), and *Gideon v Wainwright,* 372 US 335; 83 S Ct 792; 9 L Ed 2d 799 (1963) (assistance of counsel); *Ducan v Louisiana,* 391 US 145; 88 S Ct 1444; 20 L Ed 2d 491 (1968) (jury trial); *Washington v Texas,* 388 US 14; 87 S Ct 1920; 18 L Ed 2d 1019 (1967) (compulsory process); *Klopfer v North Carolina,* 386 US 213; 87 S Ct 988; 18 L Ed 2d 1 (1967) (speedy trial); *Pointer v Texas,* 380 US 400; 85 S Ct 1065; 13 L Ed 2d 923 (1965) (confrontation); *Payne v Arkansas,* 356 US 560; 78 S Ct 844; 2 L Ed 2d 975 (1958) (coerced confession); *In re Oliver,* 333 US 257; 68 S Ct 499; 92 L Ed 682 (1948) (public trial); *Cole v Arkansas,* 333 US 196; 68 S Ct 514; 92 L Ed 644 (1948) (notice of nature and cause of accusation); *Tumey v Ohio,* 273 US 510; 47 S Ct 437; 71 L Ed 749 (1927) (impartial judge).

[9] In *Anderson, supra* at 405, we observed that these errors include the deprivation of "trial counsel, an impartial judge, excluding grand jury members who are the same race as defendant, denial of the right to self-representation, denial of the right to a public trial, and a constitutionally improper reasonable doubt instruction."

admission was harmless beyond a reasonable doubt." [*Id.* at 405-406, quoting *Fulminante, supra* at 307-308.][10]

These errors require the reviewing court

> to determine, beyond a reasonable doubt that there is no "reasonable possibility that the evidence complained of might have contributed to the conviction." [*Id.* at 406, quoting *Chapman, supra* at 23.]

The lead opinion refers to the first inquiry set forth by the Court in *Fulminante, supra* at 309.[11] However, the lead opinion inadvertently mentions only the first part of the "two-part inquiry," i.e., the reviewing court must ask if the error defies a harmless error standard because it constitutes a total deprivation "of due process."[12] I agree that the error in this case does not warrant automatic reversal because it does not equate to a "total deprivation of due process."[13] I conclude that the issue here is whether defendant was denied her right to representation under the Sixth Amendment of the United States Constitution as a consequence of the trial court's decision not to provide the modified instruction to the jury, i.e., whether we may

---

[10] See *Chapman, supra* at 24, where the Court held:

> [B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.

[11] *Ante,* p 588, n 14, citing *Anderson, supra* at 405.

[12] *Id.* See also *Fulminante, supra* at 309.

[13] In *Chapman, supra* at 22, the Court declined to adopt an automatic rule of reversal because "there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless . . . ."

conclude beyond a reasonable doubt that there is no possibility that the trial court's failure to provide the modified instruction contributed to defendant's conviction.

Accordingly, part two of the "two-part inquiry" from *Fulminante, supra* at 309, should be applied to the error in this case. In determining whether a new trial is demanded, the people are required to prove beyond a reasonable doubt that there is no " 'reasonable doubt that the error complained of did not contribute to the verdict obtained.' " *Anderson, supra* at 406, n 36, quoting *Chapman, supra* at 24.[14]

III

The people argue that defendant was not prejudiced because, even if the trial court had instructed the jury on the modified instruction, the jury's focus still would have been on whether a reasonable person in defendant's position could have avoided the injury to Rodney by using ordinary care.[15]

Regardless of the people's contention, I conclude that the Court of Appeals reversal of defendant's conviction should be affirmed if defense counsel's closing argument was prejudicially affected as a result of the trial court's acknowledgment of defense counsel's

---

[14] On this basis, in order to determine whether defendant was prejudiced, inquiry must be made into what effect the trial court's error in granting defense counsel's amendment had on the jury's verdict or reasonably may be inferred to have had on its verdict. *Lee,* n 7 *supra* at 86, quoting *Young,* n 1 *supra* at 505. If it is reasonably clear to the reviewing court after weighing "the error's effect against the entire setting of the record without relation to the verdict or judgment" that the error had no prejudicial effect on the substantial rights of defendant, then it may conclude that the error was harmless. *Kotteakos,* n 1 *supra* at 764; *Lee,* n 7 *supra* at 86, citing *Young, supra.*

[15] *Ante,* pp 589-590.

proposed modification. See *Kotteakos v United
States*, 328 US 750; 66 S Ct 1239; 90 L Ed 1557 (1946),
*Chapman* and *Anderson, supra.* Hence, the trial
court's failure to provide the modified instruction
must be comparatively assessed in light of the record
as a whole and a determination must be made with
regard to whether it can be said beyond a reasonable
doubt that the error was harmless. *Anderson, supra*
at 406, citing *Fulminante, supra* at 307-308.[16]

In this instance, after the people consented to[17] and
the trial court accepted the modified portion of the
instructions, defense counsel argued throughout his
closing argument that defendant, to be found guilty,
would had to have known that Rodney's death would
result as a consequence of her conduct.[18] Defense

---

[16] The lead opinion similarly stated that "[b]ecause we cannot say with
confidence that this did not affect the jury's final outcome or that, had the
court charged the jury with the modified instruction, the defendant would
not have been acquitted, we would affirm the decision of the Court of
Appeals and would hold that the defendant is entitled to a new trial."
*Ante,* p 594.

[17] The people contend that defense counsel failed to adhere to MCR
2.516(A)(1) and 6.414(F) (the requested instructions must be submitted
in writing to the trial court). However, the people's contention is lacking
because it agreed to the amendment before defense counsel's closing
argument. Hence, the people waived its right to object.

The people also contend that defense counsel created the error in the
instructions by suggesting an amendment of the wording after he agreed
to the instructions upon which the people based its closing argument.
This contention is also baseless because the people, at the sidebar confer-
ence held immediately before defense counsel's closing argument, con-
sented to the amendment and did not object until after defense counsel
had based his closing argument on the amendment.

[18] A review of the record discloses that the people, not defense counsel,
first expressed "*death*" as an essential element of the crime as charged.
Specifically, the people stated in its closing argument:

[Defendant] knew [restricting fluids] was wrong and it
was . . . a concern not to give [Rodney] fluids. [Defendant] knew
because the doctors told her that his bed-wetting—you should only
restrict in evenings, that she discharged him on a general diet. An

counsel's reliance on the modified instruction is clearly evidenced throughout his closing argument by the following sampling from the trial transcript, i.e., that defendant did not realize her failure to hydrate Rodney would cause his death:

> It *is what [defendant] did to Rodney and whether under the circumstances it was apparent to her what she did caused his death.*

>                    *       *       *

> [Defendant] got no support or no clue that *what she was doing*—that is, denying him when he wanted more water—that that *was wrong or that would lead to death.*

>                    *       *       *

> [T]here was no suggestion that if [defendant] reduce[d] the intake [of water], you are going to cause any—*you are going to cause death,* and that's what you have got to look to.

>                    *       *       *

> [Y]ou will not find from the evidence that there was anything apparent to [defendant], which would lead a reasonable person to conclude that by denying his excessive demand, [Rodney] *would die.*

>                    *       *       *

> You have got to conclude that it was apparent to [defendant] as she was caring for her child that *her conduct would lead*—if she continued, would lead to his death. [Emphasis added.]

---

ordinary person would know that it is not prudent and it would be dangerous to restrict fluids to a young child and that could *result in the death.* [Emphasis added.]

The effectiveness of defense counsel's argument and the totality of the defense was impaired by counsel's reliance on inaccurate information regarding the jury instructions. As such, it cannot be concluded beyond a reasonable doubt that the trial court's failure to provide the instruction had no effect on the jury's verdict.

The people argue that the jury's verdict would not have been affected had defense counsel based his closing argument on the accurate instruction.[19] Nevertheless, I am persuaded that it cannot be concluded beyond a reasonable doubt that if defense counsel's argument had been retailored to focus more vigorously on defendant's conduct and not on Rodney's resulting death, there would not have been a different verdict.[20] Having reviewed the record as a whole, it is apparent that defense counsel relied on "causing death" as essential to the fourth element of gross negligence.[21] Therefore, it seems reasonable to conclude that most of defense counsel's closing argument was repudiated by the trial court's instructions. Had the trial court instructed the jury pursuant to the modified instruction, I believe "it is completely impossible . . . to say that . . . the [people] ha[ve] demonstrated, beyond a reasonable doubt," that the trial court's failure to provide the modified instruction to

---

[19] In *Kotteakos, supra* at 764, the Court stated:

[T]he question is not [whether the jury was] right in their judgment . . . [but] rather what effect the error had or reasonably may be taken to have had upon the jury's decision. The crucial thing is the impact of the thing done wrong on the minds of other men, not on one's own, in the total setting.

[20] *Ante,* p 591.

[21] See CJI2d 16.16.

the jury "did not contribute to [defendant's] conviction[ ]." *Chapman, supra* at 26.

Therefore, I conclude that the jury, in asking for a clarification of the definition of gross negligence, evidenced its confusion regarding the difference between the two arguments and the final instruction. Consequently, I am unable to declare a firm belief that the trial court's error in providing the jury with the original instruction, despite the fact that defense counsel relied on the modified version in his closing argument, was harmless beyond a reasonable doubt.

Brickley, C.J. (*dissenting*). In this case, we look at whether the trial court's refusal to give an instruction to the jury that misstated the law, but which defense counsel expected to be given, is error requiring reversal. The lead opinion concludes that the judge erred by not giving the erroneous instruction because the defendant was prejudiced. The position of the lead opinion is based, in part, on the possibility that the defendant might have been acquitted if the erroneous instruction had been given. See *ante*, p 591. I do not agree that prejudice can be based on the defendant's missed opportunity to be acquitted under an erroneous standard. Further, the defendant was not prejudiced by the change in jury instructions because the difference between the instructions did not undermine the defendant's arguments. Because I conclude that the trial judge was under no duty to give the modified instruction, in that it was an incorrect statement of law and did not satisfy the requirements of MCR 6.414(F), I respectfully dissent.

I

In chambers, before either closing argument, the parties agreed to use CJI2d 16.18 for the element of gross negligence. After the prosecution finished its closing argument, however, defense counsel called for a sidebar conference and orally moved to amend the third element of the gross negligence instruction from "likely to be serious injury" to "likely to cause death." The prosecution and the trial court initially agreed to the change. The defense then presented its closing arguments. Before the trial court instructed the jury, the prosecution objected to the changed instruction, noting that it misstated the standard for gross negligence. The defense objected, stating that it had relied on the changed standard in its closing argument. The court offered to reopen argument. The defense declined, stating that reargument would further accentuate the inconsistency. The court subsequently instructed the jury with the standard jury instruction on gross negligence on which the parties originally had agreed. The jury returned a guilty verdict.

II

In both civil[1] and criminal[2] trials, the Michigan Court Rules require that all requests for jury instructions must be (1) in writing, (2) served on the other party, and (3) brought to the court's attention before closing arguments. MCR 6.414(F) states:

> Before closing arguments, the court must give the parties a reasonable opportunity to submit written requests for jury

---

[1] MCR 2.516(A)(1).
[2] MCR 6.414(F).

instructions. Each party must serve a copy of the written requests on all other parties. The court must inform the parties of its proposed action on the requests before their closing arguments.

The intent of MCR 6.414 is apparent: both parties should have sufficient notice of how the court will instruct the jury so that they can frame their arguments appropriately. By requiring that requests be submitted in writing, both parties and the trial court will have time to reflect on the proposed instructions. Had defense counsel complied with MCR 6.414(F), it is doubtful that this case would be before us today.

Defense counsel's proposed modification did not satisfy any of the requirements of MCR 6.414(F). The proposed modification was not written.[3] It was brought to the court's attention at sidebar, outside of the hearing of the jury, and was not recorded. Written copies were not served on the prosecutor. The prosecutor first learned of defense counsel's proposed departure from the standard jury instructions after her closing argument. The request was brought after the prosecution had made her closing argument. Thus, the prosecutor was unable to frame her argument to this new standard.

Because defense counsel's modification of the standard jury instructions was brought too late, and was not in writing, it was an ineffective request. As an ineffective attempt to modify the jury instructions, the judge was under no duty to give the instruction. MCR 6.414(F). By giving effect to the defense coun-

---

[3] Under appropriate circumstances a trial court may comply with an oral request; however, the facts of this case demonstrate the pitfalls of doing so.

sel's ill-timed request, the lead opinion disregards the clear dictates of MCR 6.414(F).

III

The court, the prosecutor, and defense counsel cannot agree to change the threshold burden of proof for gross negligence because it is the trial court's duty to correctly instruct the jury on the law. MCL 768.29; MSA 28.1052; *People v Townes*, 391 Mich 578; 218 NW2d 136 (1974). The fundamental flaw in the reasoning of the lead opinion is that it fails to distinguish a judge's refusal to give an instruction on which the parties have agreed that correctly states the law from one that misstates the law. The difference between the two is significant. If a request for a jury instruction is brought pursuant to MCR 6.414(F) and correctly states the law, it is error for a trial judge to refuse to give the instruction after closing arguments if counsel's reliance on the instruction would be prejudicial. *People v Swejkowski*, 90 Mich App 366; 282 NW2d 5 (1979). But where the instruction misstates the law, as in *People v Patskan*, 387 Mich 701; 199 NW2d 458 (1972), the judge is under no similar duty. Although *Patskan*'s precedential value is limited because of its fractured opinion, it is undisputed that four justices rejected the approach that the lead opinion now recommends.

The erroneous standard that defense counsel used in his closing argument raised the threshold burden of proof for gross negligence. The dilemma the lead opinion faces is that it would hold that the judge erred by not committing error. This paradox was noted in *People v Patskan, supra* at 716, relied on by

the lead opinion, where defense counsel's closing argument was based on a misstatement of law.

> The anomaly in my Brother's position is that had the instruction been given, and defendant been convicted thereunder, we would have no choice but to reverse the conviction. [T. G. Kavanagh, Williams, JJ., concurring.]

In *Patskan*, the trial court refused to give an instruction on attempted assault with intent to commit armed robbery on which the parties agreed. Defense counsel argued on appeal that he had relied on that instruction in his closing argument.

As in the present case, defense counsel in *Patskan* also relied on an erroneous instruction. Before closing arguments, defense counsel requested the trial court to instruct the jury on the offense of attempted assault with intent to commit armed robbery. Michigan, however, does not recognize such a crime. Attempted assault is considered a logical impossibility because it is an "attempt to attempt." *People v Jones*, 443 Mich 88, 93; 504 NW2d 158 (1993). During closing arguments, defense counsel urged the jury to find his client not guilty, or, in the alternative, guilty of attempted assault.

Although the defendant in *Patskan* was granted a new trial by this Court, it is not clear that the failure to instruct the jury on attempted assault was essential to the judgment. The holding was based on two errors. One was the failure to give an instruction on which the parties agreed. The other was the failure of the judge to instruct on the lesser included offense of attempted armed robbery.

The *Patskan* Court produced three opinions, but no clear majority. Only one justice supported the proposition that the lead opinion now proposes. Two other justices, however, disagreed with that conclusion. Writing separately, and joined by Justice WILLIAMS, Justice T. G. KAVANAGH stated that the judge had no duty to give the instruction because the defense's proposed instruction misstated the law.

> Although defense counsel's closing argument indicates reliance on the court's promise to give the instruction he requested, he should not be heard to complain that the court somehow escaped the error he invited. [387 Mich 716-717.]

The lead opinion finds support from *Patskan*, yet only one—arguably three—justices supported its position. On the other hand, four justices rejected the very same position. Moreover, two of those four addressed the issue before us now in their concurring opinion, stating that a judge is under no duty to give an erroneous instruction, regardless of what he tells defense counsel. Consequently, *Patskan* does not require this Court to grant a new trial in the present case.

*People v Swejkowski, supra,* is distinguishable from the present case because the instruction on which the parties relied was a correct statement of the law.

The lead opinion's reliance on *People v Paxton,* 47 Mich App 144; 209 NW2d 251 (1973), is also misplaced. In *Paxton,* a new trial was ordered in a case in which the jury was incorrectly charged regarding the elements of self-defense. The lead opinion argues that *Paxton* is "helpful" because it demonstrates that it is error when a jury instruction does not support

the theory relied on by the defense. Instead, the decision in *Paxton* is based on the principle that it is error for the trial court to misstate the law in the instructions to the jury. Further, the opinion even undermines the position of the lead opinion.

> One of the primary functions of the trial judge is to inform the jury correctly of the law applicable in a given case. [*Id.* at 149.]

Thus, *Paxton* supports a conclusion opposite that to which the lead opinion proposes: that a primary function of the judge is to correctly instruct the jury. Instead, the lead opinion concludes that the judge erred by not misinstructing the jury.

MCR 6.414 is modeled after and incorporates provisions from Federal Rule of Criminal Procedure 30.[4] Federal courts have upheld a rule requiring "substantial compliance" with Rule 30 and have reversed convictions where the defendant establishes prejudice. *United States v Clark*, 732 F2d 1536 (CA 11, 1984). Federal courts have rejected, however, the proposition that a defendant has a right to an incorrect jury instruction merely because defense counsel argues an inappropriate standard. In upholding a change of a jury instruction that properly informed the jury of the

---

[4] Federal Rule of Criminal Procedure 30 provides in part:

At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. At the same time copies of such requests shall be furnished to all parties. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury. The court may instruct the jury before or after the arguments are completed or at both times.

charge, *United States v Pena*, 897 F2d 1075, 1085 (CA 11, 1990) stated:

> We do not believe that the requirements of Rule 30 function as a limitation on the district court's obligation to inform the jury of the law which properly governs a case. Nor do we believe that the limitations contained in Rule 30 operate to empower counsel, through the mechanics of the closing argument, either to dictate the law by which a verdict is reached or to create a mistrial by erroneously stating the legal principles applicable to a given situation.

The same principle is applicable in the case before us.

IV

The lead opinion erroneously believes that the defendant was prejudiced because it focuses on the difference between the two jury instructions, instead of the effect of that difference on the jury's verdict. An inquiry into prejudice "focuses on the nature of the error and assesses its effect in light of the weight and strength of the untainted evidence." *People v Mateo*, 453 Mich 203, 215; 551 NW2d 891 (1996). Therefore, if we are going to find prejudice, there must be some evidence that the alleged error affected the outcome.

In the beginning of the defense's closing argument, counsel argued that the defendant had acted reasonably under the circumstances. He claimed that, despite difficult circumstances, the defendant had acted responsibly, and in a manner that other reasonable people might have also. Further, because there were no physical signs of distress, the defendant was said to have had no reason to conclude that depriving her son of water would cause him to be dehydrated.

And I say to you if medical people, who are trained to fig-
ure these things out, cannot tell us, how can a reasonable
layperson like Bertha Clark or you know what to do?

\*     \*     \*

And so it's reasonable for her to conclude, and I think
any reasonable person to conclude, that you have the right,
should reduce water intake, particularly at night.

Notably, defense counsel was not relying on the dif-
ference between the standard of death and serious
injury. Instead, defense counsel presented the defend-
ant as a person who had acted reasonably. If the jury
had accepted this claim, it could have returned a ver-
dict of not guilty under either jury instruction. There-
fore, with regard to this argument, the difference
between the two instructions was irrelevant.

The defense also advanced the theory that Rodney
did not die of dehydration. Defense counsel empha-
sized the inconsistencies in the testimony of the doc-
tors who either treated Rodney or performed his
autopsy. In addition to alluding to the possibility that
Rodney had died of a seizure, defense counsel also
argued that Rodney had died, not of dehydration, but
of diabetes insipidus. Because these arguments
presented a different theory of the cause of Rodney's
death, the jury could have acquitted the defendant
regardless of whether the defendant was negligent.
Accordingly, the effect of the change in instructions
was negligible, with regard to this argument because
it advanced a different theory.

Finally, defense counsel attempted to shift the
blame for Rodney's death.

> The medical personnel in this case blew it. Dr. Ponstein didn't handle it correctly. The Department of Social Services did not act in a prudent manner. The schools slipped somewhat, and all of—and even the prosecutor's office fumbled the ball. And now they are all coming together, and although they are culpable and we can point to it, they say: Don't think about that. We didn't know what was happening there. Bertha Clark should have, and it is all her fault. The facts don't support that. She acted as best she could and it surely wasn't in a grossly negligent manner.

Like each of the preceding arguments, this argument did not rely on the difference between the two instructions. If the jury had chosen to place the blame for Rodney's death on his teachers, doctors, or social workers, it could have acquitted the defendant regardless of whether the court gave the original or the modified instruction.

Thus, the defendant was not prejudiced by the use of the original, correct instruction. Defense counsel's closing argument had four themes: the defendant acted reasonably; Rodney did not die of dehydration; Rodney's death was caused by a seizure or diabetes insipidus; and it was the fault of DSS, his teachers, and the doctors who treated him. These arguments did not rely on the distinction between "death" and "serious injury." Instead, each one attempted to deny negligence, refute the alleged cause of death, or shift the blame.

This case is analogous to *United States v White*, 27 F3d 1531 (CA 11, 1994). In *White*, a trial judge similarly refused to give an instruction on which the parties agreed. Defense counsel, as here, referred to the standard during closing argument. After closing argument, the trial court withdrew the instruction after

discovering that the instruction misstated the law. The trial court did not give the instruction that defense counsel had referred to in closing argument and, in fact, "expressly informed the jury of the deletion when delivering its oral charge." *White, supra* at 1537. On appeal, the Eleventh Circuit held that the defendant had not been prejudiced. The defendant's argument was based on a defense of good faith, noted the court, which was not affected by the withdrawal of the instruction.

> The fact that the Medicare program never authorized payment for diagnostic tests ordered or furnished by a chiropractor did not preclude the jury from finding that the Whites had a good faith belief to the contrary. By its verdict, however, the jury rejected the Whites' claim that they had acted on the basis of such a belief. [*Id.* at 1539.]

In the present case, the jury likewise rejected the defendant's claims that she had acted reasonably, that Rodney had died of a cause other than dehydration, and that others were to blame for his death. The jury was not precluded from acquitting the defendant as a result of the change in the jury instruction.

If defense counsel's closing argument had hinged on the difference between the two instructions, the defendant might have been prejudiced by the use of the original instruction. For example, her attorney might have argued that the defendant may have known that depriving Rodney of water might seriously injure him, but never would have thought that death could result. In that case, the distinction would be important. Once the judge changed the instruction

from "death" to "serious injury," the defendant's argument would have been "eviscerated," as the lead opinion contends happened here. Nothing would have remained for the jury to acquit the defendant.

Instead, defense counsel's closing argument was based on a theory that the defendant acted reasonably, that Rodney died of causes other than dehydration, and that others were to blame for his death. Because defense counsel's closing argument did not rely on the difference between the two instructions, I would find no prejudice. Had the jury believed any of defendant's arguments, it could have acquitted the defendant, despite the change in instructions. By its verdict, the jury rejected all the defendant's claims, none of which relied on the difference between the two instructions.

The lead opinion states that the trial court erred when,

> after agreeing to a modified instruction, [it] subsequently decided to charge the jury with the unmodified instruction after defense counsel relied on and conformed his closing arguments to the modified instruction. [*Ante*, p 590.]

I cannot agree that the trial judge's decision to correctly instruct the jury, regardless of what he promised defense counsel, constituted error. Any "duty" that the trial court owed to defense counsel to honor its ill-timed request for a change from the standard jury instructions, previously agreed to in chambers, was superseded by the court's responsibility to correctly instruct the jury. Further, the defendant was not prejudiced by the change in jury instructions

because the difference between the two instructions did not undermine her arguments.

This Court should vacate the decision of the Court of Appeals and reinstate the verdict of the trial court.

BOYLE and WEAVER, JJ., concurred with BRICKLEY, C.J.