963 A.2d 1184

Oscar A. CRUZ

v.

STATE of Maryland.

No. 10, Sept. Term, 2008.

Court of Appeals of Maryland.

Jan. 23, 2009.

Piedad Gomez, Asst. Public Defender (Nancy S. Forster, Public Defender, on brief), for Petitioner.

Robert Taylor, Jr., Asst. Atty. Gen. (Dougals F. Gansler, Atty. Gen., on brief), for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

ADKINS, J.

We are asked to decide whether a supplemental jury instruction on a new theory of culpability that is supported by the evidence given during jury deliberations can result in prejudice to a defendant that merits a new trial. Oscar A. Cruz was convicted by a jury in the Circuit Court for Montgomery County of second degree assault. Before closing argument the State requested a jury instruction on the common law battery version of assault, but did not request an instruction on either of the two other types of common law assault: intentionally frightening another with the threat of an immediate battery and attempting to commit a battery. After closing arguments and during jury deliberations, the court, in response to a jury question, instructed the jury on attempted battery.

We conclude that it was improper for the court to give a supplemental instruction on attempted battery during jury deliberations after the court, at the close of evidence, agreed that it would only instruct the jury on battery, the sole second degree assault theory elected by the State. The court's supplemental instruction, though generated by the evidence, was not appropriate under Maryland Rule 4–325 because defense counsel's reliance on the court's pre-closing argument instructions resulted in prejudice to Cruz.

## FACTS AND LEGAL PROCEEDINGS

Oscar Cruz, petitioner, was charged with first degree assault on Hayder Meza[1] and Oscar Martinez. At trial, fifteen-year-old Meza and fourteen-year-old Martinez testified that on January 21, 2005, at four or five in the afternoon, they were walking to the Chicken Basket restaurant when they saw Cruz drive past them and turn into an apartment complex. Martinez claimed that Ricky, a passenger in Cruz's car, pointed at him. Meza and Martinez decided to take a shortcut, walked into a parking lot, and then encountered Cruz and his friends standing outside the vehicle Cruz had been driving. Meza indicated that Cruz and his friends gave Meza and Martinez "hard looks[,]" which he described as "when somebody looks at you with hatred."

Meza went up to Cruz and said, " 'Do you have a problem? Why are you staring at me like this?' " Cruz replied, " 'What? I can't look at you?' " Meza continued to ask Cruz if he had a problem, and Cruz said, " 'Well, if you want problems, I'll give it to you.' " Meza and Martinez claimed that Cruz made MS–13 gang symbols. Martinez responded with an insult by saying " 'Fuck MS–13' " and flicking his middle finger.

Meza and Martinez testified that Cruz then took a baseball bat from Ricky. When Cruz approached Meza and swung the bat at him, Meza jumped back, dodged it, and started running away from Cruz. According to Meza, Cruz chased Martinez first, and then started chasing Meza. Meza testified that when Cruz swung the bat at him again, Meza jumped back, slipped on the snow, and fell down. Cruz then hit Meza on the head with the bat. Martinez testified that he saw Cruz strike Meza and that Cruz then turned his attention to Martinez, swinging the bat at him. Martinez blocked the bat with his arm, Cruz ran off, and then left in his vehicle.

---

1. Hayder Meza is also referred to as "Heder Meza Herrera" in portions of the trial transcript. We refer to the alleged victim as Hayder Meza ("Meza") unless quoting text in which his other name is used.

Later that evening, Meza was treated at Shady Grove Adventist hospital. The treating physician testified that Meza had a laceration, or a cut, about two centimeters long on the right side of his head. The physician acknowledged on cross-examination that Meza's injury "could have happened from different kind[s] of incidents[,]" including "if he struck his head on the curb of a sidewalk."

Reynaldo Herrera–Flores ("Reynaldo"), a friend of Cruz, testified as a defense witness. Reynaldo indicated that Cruz and Ricky stopped by while he was fixing his car in the parking lot. He said that two individuals came over and insulted Cruz. They called Cruz a "son-of-a-bitch" and said that they wanted to kill him. According to Reynaldo, Ricky grabbed a baseball bat as the two individuals approached and Cruz then grabbed the bat and chased the two away. He said that one of the individuals fell down during the chase, but that Cruz did not hit either one with the bat.

At the close of evidence, the following discussion took place concerning the jury instruction for second degree assault set forth in the Maryland Criminal Pattern Jury Instructions ("MPJI–Cr"), Section 4:01 (1997):[2]

> THE COURT: Now, the second degree assault instruction has several parts. One of the parts is the intent to frighten, attempted battery, and, C, battery. Do all of those subparts apply?
>
> [DEFENSE COUNSEL]: No, Your Honor.
>
> THE COURT: What's the State's position?
>
> [PROSECUTOR]: Your Honor, I'm not sure that—well, I think all three of each could conceivably . . .—may I have the Court's indulgence?

---

**2.** The Maryland Criminal Pattern Jury Instructions ("MPJI–Cr"), Section 4:01 (1997) has instructions for the three types of second degree assault: Part A contains an instruction on the intent to frighten type of assault, Part B has an instruction on the attempted battery type of assault, and Part C provides an instruction on the battery type of assault.

Your Honor, I think the applicable part of the second degree assault instruction is part C, which is the battery.

THE COURT: Okay. So—

[PROSECUTOR]: That's what I've been arguing.

[DEFENSE COUNSEL]: It is what? I'm sorry, I didn't hear that last one.

THE COURT: C. So the State's requesting, as far as the second degree assault instruction is concerned, the jury will be told that, "Defendant is charged with the crime of assault on both these people. And assault is causing offensive physical contact. And in order to prove the defendant guilty of this assault the State must prove the defendant caused the offensive physical contact; two, that the contact was a result of intentional act, and, three, that the contact was not consented to."

The court then instructed the jury on second degree assault as follows:

Now, in this case the defendant is charged with the crime of second degree assault on Heder Meza Herrera and, or Oscar Martinez[.] Assault is causing offensive physical contact to another person.

In order to convict the defendant of assault the State must prove: one, that the defendant caused offensive physical contact with, and, or physical harm to Heder Meza Herrera and, or Oscar Martinez. Two, that the contact was the result of an intentional or reckless act of the defendant and was not accidental. And, three, that the contact was not consented to by Heder Meza Herrera and/or Oscar Martinez.

During deliberations the jury sent a note asking, "[I]s Y falling on a sidewalk & hitting head while being chased by a bat by X, an assault by X on Y?" Upon consideration of this note, the court informed the parties that it was "going to give another instruction on second degree assault, section B, of an attempted battery." Over defense counsel's objection, the court then addressed the jury upon its reentry:

I have your note, and I've talked to counsel. And I'm going to give you another instruction and you can take it back into the jury room with you. The defendant is charged with the crime of assault on Heder Meza Herrera and/or Oscar Martinez.

Assault is an attempt to cause offensive physical contact and, or physical harm. In order to convict the defendant of assault the State must prove: one, the defendant actually tried to cause immediate, offensive, physical contact with, or physical harm to Heder Meza Herrera and/or Oscar Martinez.

Two, the defendant intended to bring about the harmful offensive physical contact and, or physical harm. And, three, the defendant's actions were not consented to by Heder Meza Herrera and, or Oscar Martinez.

The jury found Cruz not guilty of first degree assault, but convicted him of second degree assault on Meza. He was sentenced to ten years imprisonment, with all but three years suspended, and ordered to serve two years probation upon his release. Cruz filed a motion for a new trial on the ground that it was error for the court to respond to the jury's question with a "different and inapplicable instruction on assault." The court denied the motion and Cruz noted an appeal to the Court of Special Appeals. That court rejected Cruz's contention that the supplemental jury instruction was an abuse of discretion and affirmed the judgment, holding that the instruction was supported by the evidence and that Cruz was not prejudiced by its having been given during jury deliberations.

## DISCUSSION

 Cruz contends that it was improper for the trial court to instruct the jury on a new theory of culpability, the attempted battery version of assault, after closing arguments were completed. Cruz argues that this was error because counsel had given their closing arguments with the understanding that the instruction on the battery version of second

degree assault covered the State's sole theory of how the offense was committed.[3] Although Cruz concedes that the attempted battery instruction was an accurate statement of the law and generated by the evidence, he argues that the timing of the supplemental instruction was inappropriate and denied him his "right to be heard in summation of the evidence from the point of view most favorable to him[.]" Cruz maintains that he was prejudiced by the supplemental instruction, because he strategically conceded in closing that he "went after" Meza with the bat, thinking that attempted battery was off the table. He therefore focused on the offensive contact requirement of battery, arguing that Cruz never "hit" Meza with the bat. Had he known that the jury would be instructed on attempted battery, Cruz says he would have focused his argument on Cruz's lack of intent to cause offensive physical contact.

■ "The main purpose of a jury instruction is to aid the jury in clearly understanding the case, to provide guidance for the jury's deliberations, and to help the jury arrive at a correct verdict." *Chambers v. State,* 337 Md. 44, 48, 650 A.2d 727, 729 (1994). Maryland Rule 4–325 addresses, in pertinent part, when and how courts are to give jury instructions:

---

**3.** Under Md.Code (2002, 2007 Supp.) § 3–201(b) of the Criminal Law Article, " '[a]ssault' means the crimes of assault, battery, and assault and battery, which retain their judicially determined meanings." "[T]he term of art 'assault' may connote any of three distinct ideas: 1. A consummated battery or the combination of a consummated battery and its antecedent assault; 2. An attempted battery; and 3. A placing of a victim in reasonable apprehension of an imminent battery." *Lamb v. State,* 93 Md.App. 422, 428, 613 A.2d 402, 404 (1992), *cert. denied,* 329 Md. 110, 617 A.2d 1055 (1993).

"Battery ... is the unlawful application of force to the person of another." *Snowden v. State,* 321 Md. 612, 617, 583 A.2d 1056, 1059 (1991). The unlawful application of force may be the result of an intentional or reckless act of the defendant. *See Duckworth v. State,* 323 Md. 532, 539–44, 594 A.2d 109, 112–13 (1991).

An attempted battery is "an attempt by force to injure the person of another." *Yantz v. Warden of Md. House of Corr.,* 210 Md. 343, 351, 123 A.2d 601, 606 (1956). A defendant must have the specific intent to bring about the offensive physical contact or physical harm to the victim. *See Young v. State,* 303 Md. 298, 306, 493 A.2d 352, 356 (1985).

(a) **When given.** The court shall give instructions to the jury *at the conclusion of all the evidence and before closing arguments and may supplement them at a later time when appropriate.* In its discretion the court may also give opening and interim instructions.

\* \* \*

(c) **How given.** The court may, and at the request of any party shall, instruct the jury as to the applicable law and the extent to which the instructions are binding. The court may give its instructions orally or, with the consent of the parties, in writing instead of orally. The court need not grant a requested instruction if the matter is fairly covered by instructions actually given.

(Emphasis added).

■ Trial courts have discretion in deciding whether to give a jury supplemental instructions in a criminal cause. *Lovell v. State,* 347 Md. 623, 657, 702 A.2d 261, 278 (1997). This discretion, of course, is not boundless. We have held that trial courts "must respond to a question from a deliberating jury in a way that clarifies the confusion evidenced by the query when the question involves an issue central to the case." *State v. Baby,* 404 Md. 220, 263, 946 A.2d 463, 488 (2008)(discussing *Lovell,* 347 Md. at 623, 658–60, 702 A.2d at 261, 278–79).

In *Baby,* 404 Md. at 233–35, 946 A.2d at 470–72, the trial court instructed the jury on the elements of first degree rape, and the jurors, after having began deliberation, submitted notes requesting clarification on the element of consent and whether consent could be withdrawn during intercourse. The court referred the jury to the legal definition of rape that it had provided previously. This was insufficient, we held, because the jurors' questions "touched upon an issue central to its ability to determine whether [the defendant] had committed the crime of first degree rape" and the provided legal definition made "no reference to the issue of post-penetration withdrawal of consent[.]" *Id.* at 263–64, 946 A.2d at 488–89.

■ Although courts must respond with a clarifying instruction when presented with a question involving an issue central to the case, a supplemental instruction is not appropriate under Md. Rule 4–325 if given in response to a question that has "absolutely nothing to do with the case as presented to that jury[.]" *Brogden v. State*, 384 Md. 631, 644, 866 A.2d 129, 137 (2005)(emphasis omitted). "The jury should be limited in its deliberations to the issues and evidence as presented to it and should not be given answers to inquires which reach outside of the case as presented at trial." *Id.* at 644–45, 866 A.2d at 137.

In *Brogden*, the defendant was charged with burglary in the first degree; malicious destruction of property; and wearing, carrying or transporting a handgun. The defendant did not present a defense at the close of the State's case-in-chief. The jury sent a note during its deliberations asking whether it was a crime to have a handgun and if the State had the burden of proving that the defendant did not have license to carry it. The court provided a supplemental instruction stating, " 'It's the burden of the Defendant to prove the existence of the license, if one exists, not the State.' " *Id.* at 639, 866 A.2d at 133 (emphasis omitted). We concluded that the instruction was not " 'appropriate' " under Md. Rule 4–325 because it "did not state the 'applicable law' as to the issues relating to the handgun charge then properly before the jury for deliberation":

At the point the supplemental instruction was given, the entire burden of proving the commission of that particular crime rested with the State. [The defendant] had presented no defense. The jury had already been correctly instructed. To then inform the jury that [the defendant] had the burden of establishing the existence of a license in order to prevail on a defense that [the defendant] had never raised, was to impose a burden on [the defendant] that he never had.

*Id.* at 644, 866 A.2d at 136. We explained that the court should have instructed the jury "to confine its deliberations to the issues and evidence properly before it and the instructions

already given and not to speculate on matters as to which no evidence had been introduced." *Id.* at 651, 866 A.2d at 141.

Both *Baby* and *Brogden* address whether a supplemental instruction is appropriate in light of the evidence and issues presented at trial. This case presents a different issue, because it is undisputed that the evidence generated the attempted battery instruction. In contrast, the issue here is whether the juxtaposition of the supplemental instruction *vis a vis* defense closing arguments was prejudicial under these circumstances. Lacking any Maryland authority on this issue, we turn to some Federal decisions that are instructive.

Federal courts have considered the propriety of a supplemental instruction on a different theory of culpability in response to a jury question and have concluded that reversal is warranted when the defendant was prejudiced because the instruction undermined the closing argument already given by the defense. In *United States v. Gaskins,* 849 F.2d 454, 458 (9th Cir.1988), the court considered whether a district court judge violated Rule 30 of the Federal Rules of Criminal Procedure ("Rule 30") when instructing the jury on aiding and abetting after expressly stating at the close of evidence that he would not do so.[4] The defendant was charged with possessing and manufacturing methamphetamine and the prosecution tried the defendant as a principal. The defendant claimed that the drugs and drug manufacturing laboratory that was located in his home belonged to his brother-in-law. The district court, in response to a jury question posed during its second day of deliberations instructed the jury on aiding

---

**4.** Rule 30 of the Federal Rules of Criminal Procedure ("Rule 30") provides, in pertinent part:

"At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. At the same time copies of such requests shall be furnished to adverse parties. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed."

*United States v. Gaskins,* 849 F.2d 454, 458 (9th Cir.1988)(quoting Rule 30).

and abetting. The defendant objected to the instruction and requested leave to reopen closing argument to argue the facts regarding the aiding and abetting charge, but the court denied his request.

The defendant argued that the district court violated Rule 30 and that this prejudiced him because his counsel relied on the judge's statement that he would not instruct on aiding and abetting, and tailored her closing argument accordingly. The *Gaskins* court agreed, holding that "instructing the jury that it could convict [the defendant] as an aider or abettor without allowing additional argument to address this theory require[d] reversal[.]" *Id.* at 460. The Ninth Circuit observed that "the district court had the discretion to give the additional instruction in order to respond to the jury's question." *Id.* at 459. Although recognizing the district court's discretion, the Ninth Circuit held that the district court violated Rule 30, nonetheless, because "arguments based on convicting a defendant as a principal or convicting a defendant as an aider and abettor are based on two conceptually different theories." *Id.* "[H]aving found a Rule 30 violation," the court then determined that there was prejudice because the defendant's counsel "did not address [during closing argument] the question whether providing a location for the laboratory, without more, would constitute aiding and abetting the manufacture of methamphetamine." *Id.* at 460.

In *United States v. Horton,* 921 F.2d 540, 541 (4th Cir.1990), the district court instructed the jury on aiding and abetting in response to a jury inquiry. The defendant was indicted along with two others for murder, but the defendant was the only one tried. At trial, the defense objected to an aiding and abetting instruction submitted by the prosecution. The prosecution agreed to withdraw the instruction, but indicated that it would request the instruction "if evidence of aiding and abetting comes up either in argument of defendants or through the testimony that they put on[.]" *Id.* at 542. The court did not instruct the jury on aiding and abetting after closing arguments. When the district court gave the supplemental instruction to the jury, the defense complained that it had not

had an opportunity to argue that there was insufficient evidence to convict the defendant. In response, the court proposed giving each side three to five minutes of additional argument. The prosecution opposed the court's granting of any additional argument, the defense wanted ten minutes, and the court ultimately allotted each side three minutes of additional argument.

On appeal, the defendant argued that "the aiding and abetting instruction should not have been given because the government's theory of the case had always been that [the defendant] was the principal." *Id.* at 544. The defendant viewed the government's tactical decision to try the case in this manner as preventing it "from requesting an aiding and abetting instruction, even if there was sufficient evidence to support it." *Id.*

The Fourth Circuit first recognized the trial court's discretion regarding supplemental instructions:

> While [the defendant] correctly states that when a party chooses not to advance a particular theory, it is not *entitled* to an instruction on that theory even if there is evidentiary support for the theory in the record, the court is not *precluded* from giving any instruction for which there is evidentiary support. The fact that a party did not pursue a particular theory does not preclude the trial judge from giving an instruction on that theory where it deems such an instruction to be appropriate.

*Horton,* 921 F.2d at 544. The court was careful to cabin this discretion with the caveat that "a defendant must have an adequate opportunity to argue his innocence under the district court's instructions in order to be assured a fair trial." *Id.* at 546–47. It rejected the government's view "that there can be no prejudice solely because no Rule 30 violation occurred" and cautioned that "a technical satisfaction of Rule 30 cannot prevent reversal where actual prejudice is clear." *Id.* at 547.

The *Horton* court reasoned that "where a new theory is presented to the jury in a supplemental instruction after closing argument, the court generally should give counsel time

for additional argument." *Id.* It concluded that the district court erred in allowing only three minutes of additional argument, but found no prejudice on the specific facts of the case. *Id.* at 549. It reasoned:

> Adequate additional argument can cure any prejudice experienced as a result of supplemental instructions. While limitations on the scope or extent of argument are plainly within the discretion of the trial judge, an abuse of discretion may be found when the contested limitations on argument "prevent [ ] defense counsel from making a point essential to the defense." Here, the supplemental charge provoked by the jury's inquiries was obviously the focus of its deliberations. The better exercise of discretion would have been to provide additional argument.
>
> Though three minutes would have been utterly inadequate to develop an additional argument made necessary under a supplemental instruction, we are unable to discern either from defendant's actual supplemental argument or from his brief what new line of argument to the jury he really wished to pursue. A violation of Rule 30 requires reversal only when the defendant can show actual prejudice, and we can find no prejudice here. The government contends that all points essential to the defendant's case were made in the initial closing argument and that advance notice of the aiding and abetting instruction would not have altered the tenor or substance of defendant's initial closing. We agree.

*Id.* at 547 (citations omitted).

The court viewed the "factual predicates" of the State's charges against the defendant as principal and as aider and abettor as "so similar that the arguments to be made against guilt are essentially the same under both theories." *Id.* Under either theory, the defense's main argument was that the sole eyewitness to the murder lacked credibility, and the defendant challenged the witness' credibility in his initial closing by highlighting inconsistencies in his trial testimony with prior statements, intimating that the witness was lying, and pointing out that he was not wearing his glasses the night

of the murder. Defense counsel also made all of the other arguments "essential to his case" in his initial closing: someone else was responsible for the murder and the defendant's mere presence at the location of the murder was insufficient to support a conviction; the defendant had no motive for the murder; and that the jury should not infer the defendant's guilt from the defendant's allegedly false exculpatory statement, flight from the crime scene, or threats made to the government's eyewitness. *Id.* at 548.

The State argues from *Gaskins* and *Horton* that Cruz, at most, was entitled only to the opportunity to reopen argument, a remedy Cruz did not request. We are not persuaded that a supplemental closing argument would have cured the problem created by the court's eleventh hour insertion of this new theory of culpability. Even in a supplemental closing argument, defense counsel could not eradicate her earlier concession that Cruz "went after" Meza with bat in hand. With these two words, counsel conceded and emphasized the first two of three elements of attempted battery, an offense counsel thought had been withdrawn from consideration. *See* MPJI–Cr, Section 4:01(B).[5]

The difficulty of curing a tainted view of the case acquired by a juror from closing argument was recognized in *People v. Clark*, 453 Mich. 572, 556 N.W.2d 820 (Mich.1996). There, the defendant was charged with involuntary manslaughter after her child died unexpectedly from dehydration. The decedent suffered from excessive thirst, compulsive fluid drinking, and frequent urination and bed-wetting. On advise of her doctor,

---

5. **MPJI–Cr, Section 4:01(B) provides, in pertinent part, as follows.**
 **ATTEMPTED BATTERY**
 Assault is an attempt to cause [offensive physical contact] [physical harm]. In order to convict the defendant of assault, the State must prove:
 (1) that the defendant actually tried to cause immediate [offensive physical contact with] [physical harm to] (*victim);*
 that the defendant intended to bring about [offensive physical contact] [physical harm]; and
 (1) that the defendant's actions were not consented to by (*victim* ) [or not legally justified].

the defendant restricted the child's liquid intake several hours before bedtime. At trial, the prosecutor presented the defendant as a mother obsessed with the child's bed-wetting to the point of withholding liquids. Testimony revealed that the defendant would keep the child tied in bed with a cloth or nylon stockings to keep him from getting up at night, and when the child was brought to the hospital after suffering a seizure, stockings were found under the child's body on the stretcher.

Before closing arguments, the parties agreed to an instruction on gross negligence requiring the jury to find that the defendant failed to use ordinary care such that " 'it must have been apparent that the result was likely to be serious injury[,]' " in order to convict. *Id.* at 579, 556 N.W.2d at 822. After the prosecutor's closing argument, defense counsel asked the court to modify the instruction by substituting " 'cause death' " for " 'cause serious injury[.]' " *Id.* at 579–80, 556 N.W.2d at 822. The trial court agreed and defense counsel proceeded to argue in closing that the defendant "was a concerned parent doing her best in a difficult situation, and that it could not possibly have been apparent to her that her actions would result in [the child's] death." *Id.* at 580, 556 N.W.2d at 823. Before instructing the jury, the trial court indicated that it had changed its mind about the modification, because the standard requested by the defendant was higher than the law required.

When the trial court offered the defense an opportunity to reopen closing argument, defense counsel declined the invitation because reargument "would only accentuate issues that should not be accentuated and create credibility problems with the jury." *Id.* at 581, 556 N.W.2d at 823. The Supreme Court of Michigan concluded that the modified instruction was prejudicial and agreed that reargument would not have been an adequate remedy:

Defense counsel tailored his closing argument to be consistent with the theory that the defendant could not possibly have known that withholding water from the child would lead to his death. This is a far greater threshold of

knowledge for the prosecutor to prove than proving merely that the defendant knew her actions would cause serious injury, which was the theory argued by the prosecutor.

We find it impossible to conclude that the last minute change in the instructions did not affect the verdict. Under the higher standard argued by defense counsel, the defendant might have been acquitted. We agree with the Court of Appeals that reargument would be inappropriate. This would have accentuated the issue and impaired defense ·counsel's credibility with the jury.

*Id.* at 590–91, 556 N.W.2d at 827 (footnote omitted). The court vacated the conviction and ordered a new trial.

Other state appellate courts have recognized the prejudice to a defendant caused by an instruction on a new theory of culpability given during jury deliberations. In *State v. Ransom*, 56 Wash.App. 712, 785 P.2d 469 (Wash.App.Ct.1990), the defendant was arrested with another while the defendant was driving a pickup truck. Cocaine was found in the truck and the defendant and passenger were carrying a large amount of cash. A witness testified that earlier, he had given the passenger money and an order for cocaine, expecting a cocaine delivery. The state elected to forego an accomplice theory against the defendant. After the jury began its deliberations, the jury sent a note to the trial judge, " 'If someone is an accessory to the actual or constructive or attempted transfer of a controlled substance from one person to another are they both guilty of the same?' " *Id.* at 713, 785 P.2d at 469. The judge responded by giving an instruction on accomplice liability.

The Washington appellate court held that the trial court erred in giving the accomplice instruction after deliberations had begun, because "supplemental instructions should not go beyond matters that either had been, or could have been, argued to the jury." *Id.* at 713–14, 785 P.2d at 469–70. The court reasoned, "Accomplice liability is a distinct theory of criminal culpability. If the State elects to pursue that theory, it has an obligation to offer timely and appropriate instruc-

tions. A defendant has the right to rely on the fact that the State has elected not to pursue that theory." *Id.* at 714, 785 P.2d at 470.

In *People v. Millsap*, 189 Ill.2d 155, 244 Ill.Dec. 54, 724 N.E.2d 942 (Ill.2000), the defendant was charged with home invasion and robbery. There was evidence of more than one offender, but the state did not pursue an accomplice theory of liability. During deliberations, a juror sent the trial judge a note asking, " 'Is the accomplice just as guilty at *[sic]* the offender who causes an injury in a home invasion?' " *Id.* at 159, 244 Ill.Dec. 54, 724 N.E.2d at 945. The court, in response, instructed the jury on accomplice liability, and the Supreme Court of Illinois concluded that this was error.

The *Millsap* court acknowledged the "general rule" that a court "has a duty to provide instruction to the jury when the jury has posed an explicit question or requested clarification on a point of law arising from facts about which there is doubt or confusion." *Id.* at 160, 244 Ill.Dec. 54, 724 N.E.2d at 945. Nevertheless, it cautioned, a court "may exercise its discretion to refrain from answering a jury question under appropriate circumstances" and that it "should not submit new charges or new theories to the jury after the jury commences its deliberations." *Id.* at 161, 244 Ill.Dec. 54, 724 N.E.2d at 945–46. The court rejected the state's contention that the accomplice liability instruction was appropriate because it was justified by the evidence and, instead, concluded that the instruction "not only violated a statutory procedure, it impinged upon a constitutional right." *Id.* at 161, 164, 244 Ill.Dec. 54, 724 N.E.2d at 946–47.[6] The court observed that the purpose of the procedural rule was to "allow[ ] the attorneys to know the law on which the jury will be instructed so that the attorneys can tailor their arguments accordingly" and that the supplemental accomplice liability instruction violated this purpose, because

---

**6.** The pertinent Illinois rule of procedure provided as follows: " 'The court shall hold a conference with counsel to settle the instructions and shall inform counsel of the court's proposed action thereon prior to the arguments to the jury.' " *People v. Millsap*, 189 Ill.2d 155, 163, 244 Ill.Dec. 54, 724 N.E.2d 942, 947 (Ill.2000) (citation omitted).

the "defendant's attorney was entirely deprived of an opportunity to defend against this theory." *Id.* at 163–64, 244 Ill.Dec. 54, 724 N.E.2d at 947.

Relying on *Herring v. New York,* 422 U.S. 853, 857–59, 95 S.Ct. 2550, 2553–54, 45 L.Ed.2d 593 (1975),[7] the court concluded that the accomplice liability instruction impinged upon a constitutional right to make closing argument, because it denied the defendant his right to address in closing the theory of guilt upon which he may have been convicted. *Millsap,* 189 Ill.2d 155, 164–65, 244 Ill.Dec. 54, 724 N.E.2d at 947–48. The *Millsap* court explained that the trial judge, when faced with the jury's question, "should have told the jurors that they had the instructions applicable to this case and that they should keep deliberating." *Id.* at 165, 244 Ill.Dec. 54, 724 N.E.2d at 948. The court concluded that the erroneous supplemental instruction was not harmless, because the "defendant was possibly convicted based upon a theory that he was never given a chance to address." *Id.* at 166, 244 Ill.Dec. 54, 724 N.E.2d at 948.

We agree with the reasoning of these decisions, and hold that the circuit court abused its discretion in giving the jury a supplemental instruction on attempted battery during the jury's deliberations, because the court at the close of evidence indicated that it would only instruct the jury on battery, the sole theory of second degree assault elected by the State. Cruz relied on this theory in tailoring his closing argument and suffered actual prejudice from the supplemental attempted battery instruction.

We disagree with the State's assertion that the supplemental attempted battery instruction resulted in no prejudice to Cruz because "Cruz made the only argument he could have [in

---

7. In *Herring v. New York,* the Supreme Court recognized a Sixth Amendment assistance of counsel "right to be heard in summation of the evidence from the point of view most favorable to him." 422 U.S. 853, 864–65, 95 S.Ct. 2550, 2556–57, 45 L.Ed.2d 593 (1975). The *Herring* Court struck down a statute that empowered a trial judge to deny "absolutely" the opportunity for any closing summation. *Id.* at 863, 95 S.Ct. at 2555.

his closing argument], and no alternative theories have ever been advanced." Cruz's counsel first argued to the jury that Meza and Martinez were "bullies" who threatened and instigated a fight with Cruz. She asserted that Cruz acted out of fear, "only tried to get them away from him[,]" and that "the only way that he could do it was with that bat." In her words:

> [A] bully is one who intimidates, harasses, frightens another individual. Okay? Puts another individual in fear. And that's what happened here, [Cruz] was put in fear. And the only thing he could was to take the bat, which is a normal reaction, and go like this to get him away. *And it's true he went after them. The distance wasn't that much, but he went after them.* But he wanted this guy to leave him alone, to get away.
>
> * * *
>
> Now, trying to get people away from you doesn't mean that you have hit them or that there has been any kind of intentional touching. And I will submit to you that there was no touching by that, with that bat. I mean, you look at the bat that is in evidence; [Meza] wouldn't be here today.

(Emphasis added.)

This argument excerpt shows that defense counsel tailored her argument to address the battery theory of assault the State elected to pursue. It is unlikely that Cruz's counsel would have acknowledged that Cruz "went after" Meza with the bat had the State elected to pursue an attempted battery theory of assault at the close of evidence. In stating that Cruz "went after" the victim, defense counsel essentially conceded the defendant's intent to make contact and walked into an attempted battery verdict. Had Cruz known that the jury would be instructed on this assault theory, his counsel would likely not have hinged his defense on the contact element of battery and, instead, would have emphasized that Cruz never intended to bring about harmful physical contact when he grabbed the bat and chased Meza.

### Conclusion

The court's supplemental attempted battery instruction, though generated by the evidence, was not appropriate under Md. Rule 4–325 because it was given after closing arguments and thereby deprived Cruz of an adequate opportunity to defend against the new theory of culpability. The court, when presented with the jury's question pertaining to the new theory of culpability, should have told the jurors that they were to apply the law on which they had been instructed. At the close of evidence, the State would have been entitled to an instruction on any version of second degree assault as each theory constituted the "applicable law" under Rule 4–325. But once the State locked into the battery theory of assault, and declined an instruction on the other theories, Cruz had a right to rely on the State's elected theory of culpability and tailor his closing argument accordingly.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AND REMAND THE CASE TO THAT COURT FOR A NEW TRIAL; COSTS TO BE PAID BY RESPONDENT.**

BATTAGLIA and MURPHY, JJ., Dissent.

Dissenting Opinion by BATTAGLIA and MURPHY, JJ.

We respectfully dissent. To us, a trial judge cannot commit reversible error when the supplementing instruction given was legally correct and it was REQUIRED to be given under *State v. Baby*, 404 Md. 220, 946 A.2d 463 (2008). From our review of the record, furthermore, although there are cases in which a party is unfairly prejudiced by a post-argument instruction that undermines the party's theory of the case, the case at bar is not such a case.

### A.

As the majority recognizes, *see op.* at 210, 963 A.2d at 1189, a trial judge "must respond to a question from a deliberating

jury in a way that clarifies the confusion as evidenced by the query when the question involves an issue central to the case." *Baby,* 404 Md. at 263, 946 A.2d at 488, citing *Lovell,* 347 Md. 623, 659–60, 702 A.2d 261, 279 (1997). In *Baby,* the issue was whether a defendant could commit first degree rape when the victim withdrew her consent after penetration. The trial judge originally instructed jurors that "Rape is unlawful vaginal intercourse with a female by force or threat of force and without her consent," and also supplied them with descriptions of "vaginal intercourse," "force," and "consent," which were taken from the pattern jury instructions.[1] *Id.* at 262, 946 A.2d at 488. During deliberations, the jury presented the trial judge with a note, asking, "If a female consents to sex initially and, during the course of the sex act to which she consented, for whatever reason, she changes her mind and the man continues until climax, does the result constitute rape?." *Id.* at 262, 946 A.2d at 487. The trial judge, concluding that the question was ambiguous and potentially presented a question of fact rather than law, responded that she was "unable to answer this question as posed" and instructed the jury to "reread the instructions as to each element and apply the law to the facts as you find them." *Id.* at 262, 946 A.2d at 487–88. The following morning, jurors rephrased the question in a note, asking, "If at any time the woman says stop is that rape?." *Id.* at 262, 946 A.2d at 488. The trial judge again

---

1. The judge in *Baby* stated:

 Vaginal intercourse means the penetration of the penis into the vagina. The slightest penetration is sufficient. An emission of semen is not required. The amount of force necessary depends upon the circumstances. No particular amount of force is required, but it must be sufficient to overcome the resistance of the victim. You must be satisfied that the victim either resisted and that this resistance was overcome by force or threat of force or that the victim was prevented from resisting by force or threat of force. She must have resisted to the extent of her ability at the time unless her resistance or will to resist was overcome by force or fear that was reasonable under the circumstances. Finally, consent means actually agreeing to the act of intercourse rather than merely submitting as a result of force or threat of force.

 *State v. Baby,* 404 Md. 220, 263, 946 A.2d 463, 488 (2008), quoting Maryland Criminal Pattern Jury Instruction, Section 4:29.

refused to give a supplementing instruction, characterizing the question as a simplification of the first question. *Id.*

In our determination that the trial judge erred, we discussed *Lovell,* 347 Md. at 623, 702 A.2d at 261:

> In *Lovell,* we held that a trial court must respond to a question from a deliberating jury in a way that clarifies the confusion evidenced by the query when the question involves an issue central to the case. We concluded that the trial court abused its discretion in a capital case when it refused to provide further guidance on the term "youthful age" when youthful age was a statutory mitigating circumstance. In reaching our holding, we cited *Bollenbach v. United States,* in which Justice Frankfurter, writing for the Court, stated that when "a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy," as well as to *Price v. Glosson Motor Lines, Inc.,* for the proposition that when "a jury makes a specific difficulty known ... and when the difficulty involved is an issue ... central to the case ... helpful response is mandatory."

*Baby,* 404 Md. at 263, 946 A.2d at 488 (internal citations omitted). Applying *Lovell,* we held that the trial judge abused her discretion by failing to answer the jury's specific question regarding withdrawal of consent:

> The question before us, then, is whether the jury's questions made explicit its difficulty with an issue central to the case such that the trial court was required to respond to the questions in a manner that directly addressed the difficulty. In both questions, the jurors inquired about the effect of a woman withdrawing consent during vaginal intercourse. The jury's questions relating to the timing of withdrawal of consent certainly touched upon an issue central to its ability to determine whether Baby had committed the crime of first degree rape. Referring the jury to the legal definition of rape that the court had previously provided was not sufficient to address either of the jury's questions as the definition makes no reference to the issue of post-penetration

withdrawal of consent which was central to the jury's questions.

*Id.* at 263–64, 946 A.2d at 488–89. The gravamen then legally is that the supplemental instruction must be accurate and responsive to the jury's question.

Certainly, here, the jury's question, "is Y falling on a sidewalk & hitting head while being chased by a bat by X, an assault by X on Y," necessarily touches upon a central issue of whether intent to cause offensive physical contact, or physical harm, is an alternative theory by which a defendant can be convicted of an assault. As a result, the trial judge was obliged to give a supplemental instruction regarding the alternative theory of assault, which was an accurate recitation of the law, as acknowledged by the majority. The majority decision places the trial court between a rock and a hard place, because under *Baby,* the trial judge must give a legally accurate and responsive supplemental instruction, while now, the judge is in error for doing so.

## B.

We also do not share the majority's concerns that the defendant was unfairly prejudiced by the supplemental jury instruction, based on our review of (1) the opening statement of petitioner's trial counsel, (2) the on-the-record instructions conference, (3) the instructions delivered prior to final argument, (4) the final arguments, and (5) the jury verdicts.

With the benefit of hindsight, it is easy to see why the jury asked the question that was answered by the supplemental instruction. The record shows that, after instructing that "[a]ssault is causing offensive physical contact to another person," the trial court stated:

In order to convict the defendant of assault the State must prove: one, that the defendant caused offensive physical contact with, and, or physical harm to Heder Meza Herrera and[/]or Oscar Martinez. Two, that the contact was the result of an intentional or reckless act of the defendant and was not accidental. And, three, that the contact was not

consented to by Heder Meza Herrera and/or Oscar Martinez.

The defendant is charged with first degree assault on Heder Meza Herrera and Oscar Martinez. In order to convict the defendant of first degree assault the State must prove all of the elements of second degree assault and must also prove the defendant intentionally caused, or attempted to cause, serious physical injury to Heder Meza Herrera and [/]or Oscar Martinez.

In light of those instructions, it was not surprising that one or more jurors would want to know whether (1) "physical harm" to a victim includes injuries sustained by the victim in an attempt to avoid "offensive physical contact," and/or (2) whether a defendant could be convicted of first degree assault upon proof that the defendant "intentionally *attempted* to cause serious physical injury" to the victim even though the victim suffered no harm whatsoever. In light of the instructions that were delivered, we do not think that this Court should decide the case at bar by speculating on why the jury convicted petitioner of assaulting Mr. Herrera. Because petitioner was acquitted of the first degree assault of both victims, and of the second degree assault of Mr. Martinez, we are persuaded beyond a reasonable doubt that petitioner was not unfairly prejudiced by the supplemental instruction at issue.

While it is true that petitioner's trial counsel objected to the supplemental instruction at issue, she did not (1) note an exception on the ground that the new instruction permitted a verdict of guilty under the theory of the case that she had presented during closing argument, (2) request the opportunity to present additional argument in defense "against the new theory of culpability" generated by the new instruction, or (3) request a new trial on the ground that the new instruction had undermined her closing argument. Under these circumstances, we should limit our review to the issue of whether the supplemental instruction was a correct statement of the applicable law generated by the evidence presented to the jury.

Moreover, there appears to be a very good reason why the claim that the supplemental instruction undermined the closing argument of petitioner's trial counsel was never asserted in the Circuit Court. The record shows that the opening statement of petitioner's trial counsel included the following comments:

[T]hese two [victims] are much bigger than my client. And the evidence will show these two minors are bullies.

 \* \* \*

[S]uddenly, these two bullies turned from where they were ... and go in front of my client and begin to insult him. ... But when the words escalated and the words were "MS your mother" or "F your mother," that was the big offense for my client. Not only that, we heard the word "culero," which ... means that a person is a faggot, you are a coward, and that's what these two so-called juveniles were telling my client in front of his friends.

At that point, it is true, he took a bat.... [M]y client did take the bat. My client felt that he was in a corner. His mother was being insulted. And he took the bat and he swung the bat, not this way, but he was doing like that to keep these two guys away. That's what he was trying to do and that's what he wanted to do.

They began to run and he did chase them. When [Herrera] fell on the snow, it was by the sidewalk, right there on 355. My client stopped, turned around, saw the other one coming, and went to his car. And he did leave.

 \* \* \*

The evidence will show that [Herrera] fell on ice, got up and left laughing with his friends. That's what they did. His falling was the one [ ] that gave my client sufficient time for him to run to the car, get in the car and leave.

Because the strategic concession that petitioner "went after" Herrera was made at a time when it would have been unreasonable to assume "that attempted battery was off the table," and because of the instructions that were delivered prior to final arguments, we would hold that petitioner was not

unfairly prejudiced by the trial court's response to the jury's question. Accordingly, we dissent.