Dissenting Opinion by
WATTS, J.,
which BARBERA, C.J., and ADKINS, J., join.
Respectfully, I dissent. I agree with the Majority that the supplemental jury instruction was generated by the evidence, but I respectfully part company with my colleagues on the issue of whether the instruction was prejudicial.
*483 By its very nature, a supplemental jury instruction — i.e., a jury instruction given after deliberations have begun — has a special potential for prejudice. It is given after the defendant has already decided whether and how to put on a defense and given a closing argument, and after the jury has been given the initial jury instructions based on the evidence in the case. In other words, by the time that a supplemental jury instruction is given, the defendant has already adopted one theory of the case, and it is too late to change course and adopt a different one.
For multiple reasons, a jury is highly likely to place great focus on a supplemental jury instruction given after deliberations have begun. First, it is almost always given in response to a question by a jury. Second, it is given after the initial jury instructions, and, thus, is given outside the context of all of the jury instructions as a whole. And third, although the parties may have the opportunity to present additional argument in light of the supplemental jury instruction, there is no opportunity for the presentation of additional evidence to address any questions or inferences suggested by the supplemental instruction.
Given the high stakes, the attorneys involved, generally, thoroughly discuss with the trial court whether, as in this case, it is warranted to give a supplemental jury instruction — even one that simply clarifies the initial jury instructions — and, if it is warranted, how the supplemental jury instruction should be phrased.
Here, rather than agreeing to the supplemental jury instruction, counsel for Jacob Bircher (“Bircher”), Respondent, objected to the instruction and informed the circuit court he would have handled the defense otherwise had he known of the supplemental jury instruction. In this Court, Bircher does not contend that the supplemental jury instruction was an incorrect statement of the law or that it was not generated by the evidence. And, I agree with the Majority that the supplemental jury instruction was generated by the evidence. If we were reviewing an initial jury instruction, our inquiry would *484 end there. See Derr v. State, 484 Md. 88, 133, 73 A.3d 254, 281 (2013) (“A trial court must give a requested jury instruction where[:] (1) the instruction is a correct statement of [the] law; (2) the instruction is applicable to the facts of the case; and (3) the content of the instruction was not fairly covered elsewhere in instructions actually given.... [I]f, taken as a whole, [jury instructions] correctly state the law, are not misleading, and cover adequately the issues raised by the evidence, [then] the defendant has not been prejudiced[,] and reversal is inappropriate.” (Citation omitted)).
For good reason, supplemental jury instructions, however, are held to a higher standard than initial ones are. In other words, an appellate court may conclude that giving a supplemental jury instruction was an abuse of discretion even though the supplemental jury instruction was a correct statement of law, was generated by the evidence, and was not fairly covered by the initial jury instructions. An appellate court may conclude as much where the supplemental jury instruction prejudices the defendant. See Cruz v. State, 407 Md. 202, 204, 963 A.2d 1184, 1186 (2009) (“The [trial] court’s supplemental instruction, though generated by the evidence, was not appropriate under Maryland Rule 4-325 [ (Instructions to the Jury) ] because defense counsel’s reliance on the [trial] court’s pre-closing argument instructions resulted in prejudice to [the defendant].”). This is because a supplemental jury instruction has a special and high potential for prejudice.
The Cruz case offers an clear example of such prejudice. In Cruz, id. at 220, 963 A.2d at 1195, this Court held that a trial “court abused its discretion in giving the jury a supplemental instruction on attempted battery during the jury’s deliberations, because the [trial] court at the close of evidence indicated that it would only instruct the jury on battery, the sole theory of second degree assault elected by the State.” At trial, a State’s witness testified that the defendant hit the victim with a baseball bat, whereas a defense witness testified that the defendant used the bat to chase away the victim, who fell down while running away. See id. at 205-06, 963 A.2d at 1186. At the prosecutor’s request, the trial court initially
*485 instructed the jury only on battery. See id. at 206-07, 968 A.2d at 1187. During the defendant’s closing argument, the defendant’s counsel “strategically conceded in closing that he ‘went after’ [the victim] with the bat, thinking that attempted battery was off the table.” Id. at 209, 963 A.2d at 1188. While deliberating, the jury submitted the following note: “ ‘[I]s Y falling on a sidewalk & hitting head while being chased by a bat by X, an assault by X on Y?’ ” Id. at 207, 963 A.2d at 1187 (brackets in original). Over the defendant’s objection, the trial court instructed the jury on attempted battery. See id. at 207-08, 963 A.2d at 1187-88.
Upon review, this Court stated:
Although courts must respond with a clarifying instruction when presented with a question involving an issue central to the case, a supplemental instruction is not appropriate under Md. Rule 4-325 if given in response to a question that has absolutely nothing to do with the case as presented to that jury. The jury should be limited in its deliberations to the issues and evidence as presented to it and should not be given answers to inquiries which reach outside of the case as presented at trial.
Id. at 211, 963 A.2d at 1189 (brackets, citations, and internal quotation marks omitted).
Applying these legal principles to facts in Cruz, this Court explained:
[The defendant] relied on [the State’s battery] theory in tailoring his closing argument and suffered actual prejudice from the supplemental attempted battery instruction.... It is unlikely that [the defendant’s counsel would have acknowledged that [the defendant] “went after” [the victim] with the bat had the State elected to pursue an attempted battery theory of assault at the close of evidence. In stating that [the defendant] “went after” the victim, defense counsel essentially conceded the defendant’s intent to make contact and walked into an attempted battery verdict. Had [the defendant] known that the jury would be instructed on this assault theory, his counsel would likely not have hinged *486 his defense on the contact element of battery and, instead, would have emphasized that [the defendant] never intended to bring about harmful physical contact when he grabbed the bat and chased [the victim]____The court’s supplemental attempted battery instruction, though generated by the evidence, was not appropriate under M[aryland] Rule 4-325 because it was given after closing arguments and thereby deprived [the defendant] of an adequate opportunity to defend against the new theory of culpability. The [trial] court, when presented with the jury’s question pertaining to the new theory of culpability, should have told the jurors that they were to apply the law on which they had been instructed. At the close of evidence, the State would have been entitled to an instruction on any version of second degree assault as each theory constituted the “applicable law” under [Maryland] Rule 4-325. But once the State locked into the battery theory of assault, and declined an instruction on the other theories, [the defendant] had a right to rely on the State’s elected theory of culpability and tailor his closing argument accordingly.
Id. at 220-22, 963 A.2d at 1195-96.
Notably, we rejected the State’s contention that the jury instruction on attempted battery entitled the defendant only to additional argument, which the defendant did not request:
We are not persuaded that a supplemental closing argument would have cured the problem created by the court’s eleventh hour insertion of this new theory of culpability. Even in a supplemental closing argument, defense counsel could not eradicate her earlier concession that [the defendant] “went after” [the victim] with bat in hand. With these two words, counsel conceded and emphasized the first two of three elements of attempted battery, an offense counsel thought had been withdrawn from consideration.
Id. at 216, 963 A.2d at 1192 (citation omitted).
Here, reversal is warranted because, as the defendant in Cruz did, Bircher made prejudicial concessions that he might not have made had he had the benefit of knowing in advance *487 about the supplemental jury instruction and did not pursue available defenses because he was unaware that the supplemental jury instruction on transferred intent would be given. Specifically, Bircher testified on his own behalf that he bought a Glock .40 caliber pistol “for self[-]defense.” On July 13, 2012, he left his residence and drove to Cheers Lounge. He left his pistol inside his car, entered Cheers Lounge, drank some beer, and spent some time with Kristen Remmers (“Remmers”). While Bircher was outside of the lounge smoking a cigarette, Gary Allen Hale, Sr. (“Hale”) said to Remmers: “Your little boyfriend is about to get his ass beat.” Another person said: “Well he will be lucky if that is all that he gets.” Bircher decided that “it [wa]s probably time to go.” He returned to his car, but realized that he had left his debit card inside Cheers Lounge. As a result, he put his pistol into his pocket and walked back toward Cheers Lounge. A group of people, including Hale, were near Cheers Lounge’s entrance. Hale said something, but Bircher could not hear what Hale said. Hale made “a head gesture[.]” All of the people in the group looked at Bircher “at the same time” and then began walking towards him. Bircher was afraid that he was going to get “beaten to death[.]” Bircher pulled out his pistol and began “firing in between people.” (Emphasis added). He intended “to scare everybody away[,]” not to shoot anyone. (Emphasis added). He ran out of bullets, returned to his car, and drove away.
It was undisputed that Bircher shot Hale, who survived, and David Garrett (“Garrett”), who died. During Bircher’s counsel’s closing argument, he stressed that the State had offered no reason as to why Bircher would intend to kill Garrett. In other words, Bircher’s counsel argued that Bircher was not guilty of the murder of Garrett because Bircher did not intend to kill Garrett.
During deliberations, the jury submitted a note that stated: “We are confused on the term ‘intent.’ Does it mean to kill a person or the specific person. Can you please clarify. Thank you.” (Second underlining in original). Bircher’s counsel argued that a supplemental jury instruction on transferred *488 intent would be prejudicial because a very important part of Bircher’s defense to the murder count was to demonstrate that Bircher had no intent to kill Garrett. Bircher’s counsel argued that the State had failed to request an initial jury instruction on transferred intent, and that the initial jury instructions were an integral part of how he had formulated his closing argument, ie., limiting the argument to Bircher’s lack of intent to kill Garrett. Tellingly, Bircher’s counsel stated: “Had we known that th[e] theory [of transferred intent] was going to be in th[is] case[,] we would not have put the emphasis on ... the lack of motive or reason to kill [ ] Garrett in the same way that we did.”
Over Bircher’s objection, the circuit court gave the following supplemental jury instruction:
Defendant is charged ... with the murder of David Garrett. One element of this offense is the requirement of intent. Based on the [d]octrine of [transferred [i]ntent, intent is present if a person attempted to kill one person[,] and[,] as a result of that act[,] accidentally or mistakenly killed another person, such as a bystander or a third person. Under the [d]octrine of [transferred [i]ntent[,] the intent is transferred from the intended victim to the un[inte]nded victim. If[,] after a full and fair consideration of all of the facts and circumstances in evidence, [] the State proves beyond a reasonable doubt that the Defendant attempted to kill another person[,] and[,] as a result of that act[,] instead accidentally or mistakenly killed David Garrett[,] the Defendant is deemed to have intended to kill David Garrett.
(Paragraph break omitted).
I am not convinced that this supplemental jury instruction caused no prejudice to Bircher. Bircher would likely have made different strategic choices during the trial if he had had the benefit of knowing in advance about the supplemental jury instruction and had known it would be material to adduce evidence of his lack of intent to kill any person in the crowd— Hale or any other member of the crowd. Bircher’s counsel advised the circuit court as much. Bircher testified that he *489 shot into the crowd to scare away the crowd. Although Bircher did not explicitly testify that he had the intent to kill anyone in the crowd, the jury may reasonably have inferred that by deliberately shooting into the crowd, Bircher had the intent to kill a person in the crowd, ie., Hale or someone else. The instruction on transferred intent permitted the jury to convict Bircher of murder on the theory that he intended to kill a person other than Garrett. Had Bircher known in advance of the supplemental jury instruction, Bircher might not have elected to testify that he fired his pistol in the direction of a group of people that included Hale and others. Bircher’s counsel would not have hung the defense on the limited assertion that Bircher did not intend to kill Garrett; in doing so, Bircher’s counsel’s theory of the case did not address the potential finding that Bircher intended to kill Hale or someone else in the crowd, but ended up accidentally shooting Garrett.
The Majority concludes that the supplemental jury instruction did not prejudice Bircher because “Bircher’s counsel did not concede that Bircher intended to shoot [ ] Hale but not [ ] Garrett[.]” Maj. Op. at 478-79, 132 A.3d at 304. Although this is true, the fact remains that Bircher’s counsel relied on the assertion that Bircher did not intend to kill Garrett and allowed Bircher to testify that he shot into a crowd that Hale — a person who had threatened Bircher earlier — was a part of. As such, Bircher’s counsel’s assertion that Bircher did not intend to kill Garrett essentially became pointless after the supplemental jury instruction, since the instruction permitted the jury to find that Bircher intended to kill Hale or anyone else in the crowd, and ended up accidentally shooting Garrett.
Although a group of judges may be able to determine that neither Bircher nor his counsel made an explicit concession as to his intent to kill Hale or another member of the crowd, it is less clear that a jury of lay people would necessarily have discerned the same. Indeed, after hearing the supplemental jury instruction, the jury could very well have believed that Bircher’s counsel had been hiding the ball all along by focusing on Bircher’s lack of intent to kill Garrett and ignoring the *490 circumstance that Bircher shot into a crowd of people, including Hale — that belief would have been fatal to Bircher’s case.
In my view, the Majority’s holding is worrisome because it condones a supplemental jury instruction: (1) that the State did not initially request;[1] (2) to which the defendant objected; and (3) that essentially undermined the defendant’s theory of the case. Although the goal of any criminal trial is to unearth the truth, a trial — even one involving serious criminal charges such as this — must be fair for the defendant; and, in this case, the supplemental jury instruction acted as something of an unfair ambush on the defense.
For the above reasons, respectfully, I dissent.
Chief Judge BARBERA and Judge ADKINS have authorized me to state that they join in this opinion.

. The supplemental jury instruction could easily have been requested by the State in advance. The record reveals no logical reason for the State's failure to have requested the instruction. The concern is that, by permitting a supplemented jury instruction under these circumstances- — i.e., an instruction that could easily have been requested by the State but was not, and was given over the objection of the defendant, and where the potential for prejudicial was evident — -we invite similar occurrences in the future and leave it for appellate courts to parse the facts of the case to determine whether the defendant may have been prejudiced.