*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

GREGORY CARLOS BOSWELL,

        Defendant-Appellant.

UNPUBLISHED
January 26, 2023

No. 358448
Oakland Circuit Court
LC No. 2019-272390-FC

Before: YATES, P.J., and JANSEN and SERVITTO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of second-degree murder, MCL 750.317,[1] two counts of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84(1)(a),[2] and three counts of possession of a firearm during the commission of a felony, MCL 750.227b. The trial court sentenced defendant to concurrent prison terms of 35 to 60 years for the murder conviction, and 5 to 10 years for each AWIGBH conviction, to be served consecutive to three concurrent two-year terms of imprisonment for the felony-firearm convictions. We affirm.

## I. FACTUAL OVERVIEW

Defendant's convictions arise from the fatal shooting of Giovanni Smith and the nonfatal shootings of Benjamen Baso and Tyler Davis outside defendant's residence in Pontiac on the

---

[1] Defendant was charged with first-degree premeditated murder, MCL 750.316(1)(a), but the jury found him guilty of the lesser offense of second-degree murder.

[2] Defendant was charged with two counts of assault with intent to commit murder, MCL 750.83, but the jury found him guilty of the lesser offense of AWIGBH.

evening of August 21, 2019.[3]  The prosecution presented evidence that after defendant broke up with his girlfriend, Ashley Cousino, she went to his home to pick up the remainder of her belongings on August 21.  Ashley informed her mother, Kathryn Baso, of her plans, and Kathryn drove to defendant's house and parked across the street.  Kathryn also alerted Ashley's brothers, Eric Cousino and Benjamen.  The brothers and friends who were with them at the time, which included Davis and Smith, came to the area and parked down the street to keep watch.  Subsequently, Kathryn, Ashley, and defendant talked outside of defendant's home.

At some point, Eric came over to talk to defendant, and their conversation escalated into a physical fight.  Benjamen and his friends ran down the street, and two or three of the friends joined in the fight.  The fight lasted approximately one minute.  After it ended, defendant got up and went toward the front of his home.  One of the friends approached defendant, and defendant and the friend both threw a punch before defendant went inside the house, closing and locking the door behind him.  The rest of the group began walking away from defendant's house.  Approximately one minute later, defendant emerged from the house with a gun, fired six shots, and, according to Ashley, was shooting "at everybody that was walking back to their car."  Kathryn testified that defendant "was aimlessly shooting everywhere" "trying to hit any target he possibly could."  A neighbor, who had previously heard arguing, looked outside and saw defendant run inside the house, return within a minute, and "almost immediately" begin shooting toward the people "as they ran off" down the street.  Subsequently, as the neighbor attempted to help Smith, who had been struck in the head by the gunfire, defendant stated, in an aggressive tone:  "F*** that ni**a, let him die."  Prosecution witnesses testified that no one, other than defendant, had any kind of weapon, and no one was charging or running toward defendant before or during the shooting.

At trial, defendant asserted that he acted in self-defense.  Defendant testified that after being attacked, he ran upstairs, took his father-figure's gun from a bag, and immediately ran back outside because he "just didn't feel safe in that house because [he] did not want them to shoot into the house."  According to defendant, before going inside the house, he saw one of the friends make a hand gesture, which he interpreted to mean the person had a gun.  Defendant also saw another person on the sidewalk "messing around with their pants, waistline pocket area."  After retrieving the gun, defendant quickly walked to the sidewalk, turned to his right, and saw a man (later identified as Smith) standing by a tree.  According to defendant, the man raised his arm and had "something black" in his hand, and defendant, believing that the man had a gun, raised his arm and fired the gun.  Defendant then saw "another man charging" at him "with something else in his hand."  Defendant fired the gun toward the man "until it was empty" because he honestly and reasonably believed he was in danger of being killed.

The jury rejected defendant's self-defense claim and convicted him of the lesser offenses of second-degree murder (Smith) and two counts of AWIGBH (Benjamen and Davis).

---

[3] The medical examiner testified that the cause of Smith's death was a gunshot to his face; his death would have been immediate because of the trajectory of the bullet.  Benjamen was shot in the leg, and Davis was shot in the wrist.

## II. PHOTOGRAPHIC EVIDENCE

Defendant first argues that the trial court abused its discretion by admitting a crime scene photograph that depicts Smith in the location where he was found, lying in blood from his gunshot wound. We disagree. The decision to admit photographic evidence is within the sole discretion of the trial court and will not be disturbed on appeal absent a clear abuse of discretion. *People v Head*, 323 Mich App 526, 539-540; 917 NW2d 752 (2018). An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes. *People v Lewis*, 302 Mich App 338, 341; 839 NW2d 37 (2013).

The general rule is that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, the[] rules [of evidence], or other rules adopted by the Supreme Court" and "[e]vidence which is not relevant is not admissible." MRE 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. "A trial court admits relevant evidence to provide the trier of fact with as much useful information as possible." *People v Cameron*, 291 Mich App 599, 612; 806 NW2d 371 (2011). Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice under MRE 403. MRE 403 is not intended to exclude "damaging" evidence, because any relevant evidence will be damaging to some extent. *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995), mod on other grounds 450 Mich 1212 (1995). Unfair prejudice exists where there is "a danger that marginally probative evidence will be given undue or pre-emptive weight by the jury" or "it would be inequitable to allow the proponent of the evidence to use it." *Id*. at 75-76 (quotation marks and citation omitted). In the second situation, the unfair prejudice language "refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *Cameron*, 291 Mich App 611 (citation omitted). The prosecution may not introduce evidence specifically calculated to inflame the jury's emotions, especially if the evidence has little other substantive value. *Mills*, 450 Mich at 77. The gruesomeness of a photograph, standing alone, is insufficient to merit its exclusion. *Id*. at 76. "The proper inquiry is always whether the probative value of the photographs is substantially outweighed by unfair prejudice." *Id*.

The trial court did not abuse its discretion by admitting the challenged photograph. The photograph was instructive in aiding the jury's understanding of exactly where Smith's body was found and the surrounding conditions, which was probative of the disputed issues of defendant's intent and his self-defense claim. The photograph also corroborated the testimony of a neighbor, who attempted to assist Smith after the shooting, and a responding emergency medical technician concerning what they both observed related to the location and condition of Smith's body. See *id*. at 71-72. Contrary to defendant's argument, the fact that he did not dispute the cause of Smith's death or the location of the body does not render the photograph inadmissible. See *id*. at 71. "Photographs are not excludable simply because a witness can orally testify about the information contained in the photographs." *Id*. at 76. In addition, the prosecution was not obligated to use the least prejudicial evidence possible. While defendant argues that the use of only those photographs from a distance, as opposed to the challenged "close-up" photograph, would have been less likely to affect the jurors' emotions, a relevant photograph is not inadmissible merely because it may arouse emotion. The photograph was not offered to simply inflame the jury. The trial court

considered the parties' arguments at trial, and it credited the prosecutor's position regarding the probative value of the photograph to show the exact location of Smith's body as it related to defendant's claim of self-defense. The court's remark that it had "seen more gruesome pictures than that" indicates that the court also considered the potential prejudicial effect of the photograph, and concluded that any prejudicial effect did not substantially outweigh the probative value of the photograph as it pertained to the relevant purpose for which it was offered. Thus, it is apparent that the trial court judicially weighed the probative value of the photograph against its potentially prejudicial effect. The trial court's decision to admit the photograph, which was relevant to material issues at trial, was within the range of reasonable and principled outcomes. Accordingly, the trial court did not abuse its discretion by admitting it.

## III. JURY INSTRUCTIONS

Next, defendant argues that he is entitled to a new trial because the trial court failed to instruct the jury that self-defense could also be a defense to AWIGBH, a lesser offense of assault with intent to commit murder (AWIM). Again, we disagree. As defendant correctly observes, the trial court instructed the jury that lawful self-defense is a defense to first-degree murder, the lesser offenses of second-degree murder and voluntary manslaughter, AWIM, and the three counts of felony-firearm associated with the murder and assault charges, but omitted AWIGBH from the stated list of offenses for which self-defense could apply to excuse criminal responsibility.

## A. INSTRUCTIONAL CLAIM

As defendant acknowledges, there was no objection to the trial court's jury instructions as given, or request for any additional instructions. Indeed, after the trial court completed its final instructions, the court asked the parties whether the attorneys were "satisfied with the jury instructions with the modification that has been requested by the prosecutor[.]" Defense counsel stated, "Defense is satisfied." By expressly approving the jury instructions, defendant waived appellate review of his substantive claim of instructional error. *People v Kowalski*, 489 Mich 488, 504; 803 NW2d 200 (2011). Defendant's waiver extinguished any error, leaving no error to review. *People v Carter*, 462 Mich 206, 216; 612 NW2d 144 (2000).

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant further argues, however, that defense counsel was ineffective for failing to request an instruction clarifying that self-defense also applies to the lesser offense of AWIGBH, and for failing to object when an instruction in that regard was not given. We disagree.

Defendant preserved his claim of ineffective assistance of counsel by moving for a new trial or an evidentiary hearing in the trial court. *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). However, because the trial court denied defendant's request for an evidentiary hearing, review of this ineffective-assistance claim is limited to "errors apparent on the record." *Id*. "Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *People v Solloway*, 316 Mich App 174, 187; 891 NW2d 255 (2016). "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v*

-4-

*Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Id*.; see also *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "A defendant must meet a heavy burden to overcome the presumption that counsel employed effective trial strategy." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009).

It is clear from the record that the trial court failed to explicitly include the lesser offense of AWIGBH when listing all of the charged and lesser offenses to which lawful self-defense applied.

Whether defense counsel's failure to object to the trial court's jury instructions was objectively unreasonable depends on whether the court's instructions fairly presented the issues and sufficiently protected defendant's substantial rights. Due process requires that the trial court "properly instruct the jury so that it may correctly and intelligently decide the case." *People v Clark*, 453 Mich 572, 583; 556 NW2d 820 (1996). To that end, the jury instructions "must include all elements of the crime charged, and must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them." *People v Armstrong*, 305 Mich App 230, 240; 851 NW2d 856 (2014) (quotation marks and citation omitted). Jury instructions are, however, reviewed in their entirety to determine whether any error requiring reversal occurred. *Kowalski*, 489 Mich at 501. An imperfect instruction will not warrant reversal if the instructions, examined as a whole, fairly presented the issues to be tried and sufficiently protected the defendant's rights. *Id*. at 501-502.

While the trial court's self-defense instructions were imperfect because they did not explicitly state that self-defense could apply to the lesser offense of AWIGBH, they fairly presented the issues to be tried and sufficiently protected the defendant's rights. The trial court clearly instructed the jury that self-defense applied to all of the other charges, including AWIM and the felony-firearm charges related to the AWIM charges and thus, logically, applied to the lesser offense option of AWIGBH.

However, even if it was objectively unreasonable for defense counsel not to object to the court's omission or not to explicitly request an instruction clarifying that self-defense also applies to the lesser offense of AWIGBH, defendant has not demonstrated that he was prejudiced by counsel's failure in this regard. As previously indicated, prejudice is established when a defendant shows that "but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. As plaintiff observes, the trial court's instructions made it clear that self-defense applied to all of the felony-firearm charges, and two of those charges were associated with the AWIM charges for which the jury was also instructed on the lesser offense of AWIGBH. Thus, in order to find defendant guilty of the two felony-firearm counts related to defendant's two AWIGBH convictions, the jury had to have concluded beyond a reasonable doubt that defendant was not acting in self-defense when he committed AWIGBH.

Furthermore, there was no material distinction between defendant's theory of self-defense as it related to the assault and the murder charges. Although defendant seeks to somehow separate his conduct related to his murder conviction, for which the trial court properly instructed the jury on self-defense, from his conduct related to the AWIGBH convictions, each of these charges arose

from the same uninterrupted sequence of events in which defendant emerged from his house with a gun and fired multiple shots at bystanders whom he allegedly perceived as threats to his safety. The jury's verdict reflects its complete rejection of defendant's claim that he acted in self-defense. While it would have been appropriate for the trial court to have listed AWIGBH in its self-defense instructions, there was no rational basis for the jury to conclude that defendant was acting in self-defense when he fired gunshots at the AWIGBH victims, but not when he fired a gunshot at the murder victim. Thus, from an evidentiary perspective, there is simply not a reasonable probability that the outcome would have been different had the lesser offense of AWIGBH been included in the trial court's self-defense instructions. *Id*. Indeed, defendant's own testimony at trial simply did not show that he acted in lawful self-defense. See MCL 780.972(1). In particular, defendant testified that after he went inside his home and closed the door, there was no imminent danger, and he conceded that there was no imminent danger after he rushed back outside with a gun, and that he "walk[ed] to the [alleged] danger[.]"

In sum, reviewing the trial court's instructions in their entirety, and considering the evidence presented at trial to support defendant's theory of self-defense, there is no reasonable probability that the outcome would have been different but for defense counsel's inaction related to the trial court self-defense instructions. Thus, defendant has not demonstrated that he was prejudiced by defense counsel's inaction. Therefore, defendant cannot establish an ineffective-assistance claim. *Nix*, 301 Mich App at 207. Accordingly, the trial court did not abuse its discretion by denying defendant's motion for a new trial on the basis of defendant's claim of an instructional error or the related ineffective-assistance claim. *People v Abraham*, 256 Mich App 265, 269; 662 NW2d 836 (2003).

## IV. VICTIM-IMPACT STATEMENTS

In his last claim, defendant argues that he is entitled to resentencing because statements from several persons who do not qualify as "victims" under the Crime Victim's Rights Act (CVRA), MCL 780.751 *et seq*., were allowed to submit written statements for the trial court's consideration at sentencing. We disagree. Whether various individuals were entitled to make a victim-impact statement at sentencing is a question of law, which is reviewed de novo. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

"MCL 780.764 and 780.765 grant individuals who suffer direct or threatened harm as a result of a convicted individual's crime the right to submit an impact statement both at the sentencing hearing and for inclusion in the PSIR[.]" *People v Waclawski*, 286 Mich App 634, 691; 780 NW2d 321 (2009). However, "the right is not limited exclusively to the defendant's direct victims," *id*., "but may also include others, such as family members," *People v Lampe*, 327 Mich App 104, 123; 933 NW2d 314 (2019); *Waclawski*, 286 Mich App at 691-692. In any event, for purposes of making or submitting a victim-impact statement, if the victim is deceased, the CVRA specifically includes in its definition of "victim" a "parent of the victim" and a "sibling of the victim." MCL 780.752(1)(m)(*v*)(C) and (E). Thus, in this case, Smith's sister and mother were both authorized to make a victim-impact statements. When defendant challenged the numerous letters received by the trial court in his motion to correct an invalid sentence, the court made clear that it was only "the statements of the victim's mother and sister that impacted [the] court's decision as to sentencing." While letters from other individuals were in fact submitted, defendant correctly concedes that "[i]f the Court did not rely on the challenged information, resentencing

would not be required." In sum, because Smith's mother and sister were authorized to submit victim-impact statements under the CVRA, and the trial court made clear that it only relied on those two statements when determining defendant's sentence, defendant is not entitled to be resentenced on this ground.

Affirmed.

/s/ Christopher P. Yates
/s/ Kathleen Jansen
/s/ Deborah A. Servitto